NATHAN HUGHES *vs.* EDWARD T. PARKER.

*Error from the Circuit Court of Tuscaloosa County*—Before the Hon. A. CRENSHAW.

The decision of an inferior court upon an abstract question of law, having no apparent connection with the issue before it, is no ground of reversal, in error.

Where the decision of a court on a question of law is excepted to, the record must show the relevancy between the point involved and the issue.

Trover for the conversion of seven clocks.

The points involved in the decision of this case, came before the court on a bill of exceptions, which sufficiently explains its nature.

On the trial, the defendant, by his counsel, moved the court to instruct the jury, that if a general agent sell the property of his principal, (there being some evidence that the principal was known, and some that he was not) in discharge of his own debt previously contracted, such sale vested the property sold in the purchasing creditor of the agent. Also, that if the jury believed the agent was entitled to receive payment of his wages out of the proceeds of the property to be sold, then, if the agent sold the property of his principal in payment of his own debt, provided that debt did not exceed the value of the property sold; such sale would vest the property in the purchasing creditor. The court having refused to give this charge, a bill of exceptions was tendered, and the refusal aforesaid is now here assigned as error.

WILSON, for Plaintiff.

AIKIN, for Defendant.

Before considering the legal doctrines relied on by the plaintiff, it will be proper to inquire, do they really arise out of the record ; and if so, how far is their application modified by the peculiar features of the case itself. The first step towards a correct decision, is to fix clearly the subject to be decided. This court cannot act upon vague suggestions. Although constituted for the correction of errors, yet it will not travel out of its way to find them. To sustain the proceedings of the inferior courts, when right, is as much its duty, as to reverse them when wrong. It will never presume error—but on the contrary require it to be shown. Nor is it sufficient that the alleged error is merely probable : it must be certain and manifest. If this court can presume at all, it will presume most strongly against the plaintiff in error ; and will believe his case, as exhibited by the record, to be the most farvoable to him, which the real facts will warrant. As in the court below, the plaintiff can succeed only by clearly showing his right, so here, he can prevail only by showing with the same clearness, the wrong which he seeks to correct. Uncertainty is as fatal in the one case as the other. This doctrine is agreeable to common sense, and accords with the whole theory of legal presumption. It is substantially incorporated into a standing rule of this court, which requires the plaintiff suggesting a diminution of the record, to show cause, before a *certiorari* is awarded him ; but grants it to the defendant, upon mere application as a mere matter of course. The requisition that error must be made manifest before a reversal, would seem, if any inference can be drawn from the language of judicial proceedings, to be as ancient as the writ of error itself—for it grounds the interference of the Superior Court upon the fact that "*manifest error hath intervened.*" Fortunately, however, a principle of such consequence, is not left to be collected from these loose evidences. It is affirmed in a long train of authorities—2 *Bac. Ab.* 529—*Bill of Exceptions*—8 *East's Rep.* 280—2 *New. Rep.* 36—*Shower's*

*Parl. Cases*, 120—2 *Caines*, 169—5 *John. Rep.* 467—8 *John. Rep.* 396—3 *Littell's Rep.* 16—2 *Binney*, 168. Our statute of 1814, giving the bill of exceptions, is not couched in terms calculated to abate the strictness required in the authorities just cited—*Aikin's Dig.* 254, *sec.* 5.

Among the consequences of this principle, is the one which applies directly and forcibly to the present case ; that where the error complained of, is the refusal of the Judge below, to charge the jury as requested, the matters of law contained in that charge must be shown by evidence, in the bill of exceptions, or other part of the record, to be connected in a pertinent manner with the cause he was trying—otherwise this court cannot determine whether they were important or not ; or if the Judge committed an error, whether that judgment reached to and vitiated the judgment. To declare the law correctly, is a duty certainly, but yet circumscribed by the objects for which it was imposed. It extends to only such law as has a material bearing on the case. To refuse an impertinent instruction, even when involving a proposition true in the abstract, is an obligation no less imperative on the Judge, than to give it when true and pertinent : because the giving such a charge would tend to delude the jury into a belief that the Judge thought it required by the state of the evidence, and would thus virtually amount to an instruction on a matter of fact. A contrary doctrine would lead to the most pernicious results. No judgment could stand unrevested, if the successful party were compelled to abide the hazard, that every opinion delivered by the Judge in the course of the trial, whether relevant or not, was a correct one. Counsel who wished to make litigation endless, would only have to reduce to a schedule a few of the vexed questions of the law, interlarded with some of its more recondite or forgotten doctrines, and gravely propound each point successively to the judge ; and the contest in the inferior courts would be, not who could best unfold the merits of his case, but who could most adroitly surprise the Judge into a wrong opinion, upon a point fo-

reign to the merits. The force of these considerations has not been lost on this court heretofore, as appears by their opinion in the case of *Wilson* vs. *Jackson*—*Min. Rep.* 369. Besides, the real ground of complaint is, that the judgment following the verdict, is wrong in point of law. Now, as every general verdict includes law as well as fact, it follows, that where no facts are supplied by the record, this court can never know what principle of law was combined with the facts in the formation of that verdict—nor if the charge was wrong, whether the jury may not have disregarded it, and returned a verdict embracing the opposite doctrine. In reversing a judgment thus situated, the court may perchance correct the law—but it clearly runs the equal hazard of changing the finding of the jury on a matter of fact, which is their exclusive province.

On examining the record, it will be perceived, that these doctrines, so essential to certainty in judicial proceedings, apply in a pointed manner to the case before us. It does not appear that any of the doctrines on the subject of agency were at all relevant. It is not shown who was the agent, what was the nature of the agency, or how the agent's acts related to the subject of controversy.

But, were the court even authorised, by the state of the record, to adjudicate this cause upon the points made in argument, they could not avail the plaintiff. From the bill of exceptions it is clear, that the jury might have found the fact, that the principal was known to the person dealing with the agent—and the instruction being asked unconditionally, was properly refused, unless it would have been right under such a finding. But the instruction that a general agent thus situated, could sell his principal's goods for his own benefit, would have been wrong for another reason: because the objects of the agency not being shown, its powers are not susceptible of a definition. They must be collected from the course of trade and the nature of the employment, and are therefore, as much diversified as human concerns ; for any

of them not forbidden by law, may be committed to an agent—
2 *Mod.* 100—*Willes*, 406—1 *Camp. N. P. C.* 258—15 *East*,
407—1 *Liv. on Agency*, 107—2 *ib.* 193.

Hughes
vs.
Parker.

There are many general agents whose authority extends
only to the custody, and not to the sale of the goods—and for
any thing appearing on the record, the agent here may have
been of that class. But supposing the charge to have been
asked under such an implied qualification as would be war-
ranted by the circumstances of the case, still the settled doc-
trines of the law are against the plaintiff.—1 *Liv. on Agency*,
94, 104—1 *Taunt.* 349, 350—13 *John. Rep.* 332—3 *Stew-
art's Rep.* 26. Besides, this circuitous transaction, included,
substantially, in the first instance, a purchase of the princi-
pal's property by the agent, which is forbidden—1 *Liv. on
Agency*, 416, 417, 418. So inflexible is the rule, that a gen-
eral agent cannot exceed his ostensible powers—that a factor
whose duty is to *sell* cannot *pledge* the goods for his own debt,
even where the principal is unknown—2 *Str.* 1178—1 *M. &
S.* 140—2 *Stark.* 21—4 *B. & A.* 443—2 *B. & A.* 639—3 *B.
& C.* 342.

The second instruction, which related to the agent's lien,
was properly refused, because it was coupled with a condi-
tion utterly absurd in itself. But apart from this condition,
the right to receive compensation for selling out of the pro-
ceeds of the property, if it be a lien on the money in the agent's
hands, before it is paid over, can never amount to a lien on
the specific property itself. A lien is good only while united
with possession. On parting with the possession, the lien is
forfeited—2 *Livermore. on Agency*, 76, 78. Here it is evi-
dent, that this legal requisite to the validity of a lien could
never arise : for the agent's compensation for selling, which
is insisted on as a lien, is not due until the service is fully per-
formed : that is, until the property is sold, and possession
transferred to the vendee.

HOPKINS also argued on the same side.

Singleton
vs.
Finley.

By Mr. Chief Justice LIPSCOMB :

The bill of exceptions in this case, shows that the court refused to charge the jury, as requested by the counsel for Hughes, who was defendant in the court below.   The record does not show any connection between the charge prayed and the issue.   It appears that the Judge was asked to respond to an abstract question of law, having no relation to the facts in the case then on trial.   In the case of *Wilson* vs. *Jackson*,[a] and *Keith* vs. *Patton*,[b] it was decided, that the record must show the relevancy of the charge prayed, to the issue.   A decision on an abstract question of law, if clearly wrong, is no ground of reversal.   The Judge in this case, declined responding to the request of the counsel, and it may have been because he looked upon it as irrelevant—and as its pertinancy is not shown by the record, we must infer that to have been the case.

The judgment must be affirmed.