## ETHERIDGE vs. DOE EX DEM. MALEMPRE.

1. Where, in a common law suit, the judge, by consent of parties, is substituted for the jury, and the evidence is conflicting and contradictory, this court will not revise the action of the primary court, as to its conclusion upon the facts.

2. Although, since Congress has exercised the power confered by the Federal Constitution of establishing a uniform rule of naturalization, no State can pass an act by which aliens may be naturalised, yet each State has the un-

doubted right to enact laws regulating the descent of and succession to property within its limits, and consequently to permit an alien to inherit it.

3. As the law governing the succession to property emanates from the State, and the State has the power, when there are no heirs, to determine who shall take, it follows, that lands, which have been patented by the United States to an alien, will, on his death without leaving inheritable blood, escheat to the State, and not revert to the General Government.

4. The Act of the 16th January 1844, for the relief of Francis de Malempre, (Pamphlet Acts of 1843-4, p. 56,) does not simply remove the disability of alienage, under which he and those through whom he claimed labored, leaving him to prove that he is the rightful heir of Christopher Vanner, but is an unconditional legislative grant to him of all the lands, of which the the said Christopher died seized and possessed.

5. But Christopher Vanner being incapable, at the time of the death of his brother John Vanner, by reason of alienage, of inheriting the lands of the latter, and consequently having never acquired the legal seizen thereof, such lands did not pass by the said act.

6. However true the doctrine, that a grant of land by the Government to an alien and his heirs necessarily confers the power to enjoy and transmit it, when applied to legislative grants, it does not hold good as to patents, issued by the ministerial officers of the Government upon ordinary purchases by an alien of the public domain.

ERROR to the County Court of Tuskaloosa. Tried before the Hon. George D. Shortridge.

PECK, for the plaintiff in error:

1. The act of the Legislature is a concession that the defendant could not inherit the estate, because he was an alien, and not a citizen. If so, then the Legislature could not grant him the privileges of citizenship for that purpose; Congress alone could do this. If the Legislature cannot confer the privileges of citizenship for every purpose, they cannot for any.—4th paragraph, 8th section, 1st Article of the Constitution of the U. States; Article 4, § 2.

2. The act is inoperative as to the premises in question, because if they escheated on the death of Christopher Vanner, they reverted to the United States, and not to the State of Alabama. The State of Alabama never had any title to the premises, they form a part of the territory that belonged to the State of Georgia, that was ceded to the United States by the articles of agreement bteween the United States and Georgia, of the 24th April 1802. By the ordinance adopted by the convention that framed the Constitution of Alabama, the State forever disclaimed all right and title to the waste and unpopulated lands

Etheridge v. Doe ex dem. Malempre.

lying within the same; therefore, if Christopher Vanner died without heirs capable of inheriting the premises, they reverted to the United States, by whom they were granted to him.—2 Thomas' Coke, 188, and note b, 189, and notes c and d; 2 Wendell's Blackstone, 73, 89, 244, and note 7; 4 Kent's Comm. 423-4, and note c; Chitty's Blackstone, book 2, top p. 196, marg. 245.

3. If the act can operate for the benefit of the defendant, he can only recover the estate whereof Christopher Vanner died seized and possessed. Now, although he died in the possession of the entire premises, he was seized of one half only; the other half was granted by the United States to John Vanner, who died an alien, and consequently, there was no descent from him to Christopher, and, therefore, in any event, judgment should have been rendered for the defendant for half of the premises only.

4. To enable the defendant to recover the estate of Christopher Vanner under the act, he must show that if the disability of alienage had not intervened, he could have taken it by descent, as heir at law. The very language of the act is, that he "is declared and made capable of inheriting the real estate whereof Christopher Vanner, deceased, died seized and possessed, in the same manner as if the said deceased, the said Malempre, and all persons through whom he may claim the same, were natural born citizens of the United States." The object of the second section was merely to release to him as the next of kin of the deceased, any right that the State might have, if any, in the same, by escheat. The question arises, does the evidence in the record prove that the defendant is what he claims to be, the nephew of the said Christopher Vanner? I maintain that it does not. The copies of the alleged registers of marriages and births, as presented, are inadmissible and incompetent to prove any thing. There was no competent evidence that by the laws of Germany, such registers are required to be made, or that the persons by whom they purport to have been certified were authorised to certify copies as evidence, even in the courts of Germany. The evidence of what the witness Keertz swore on the trial of Smith v. Zauer, read from the report of that case, in 4th Ala. 99, was wholly inadmissible to prove the laws of Germany, or any other fact; but if it were shown that such registers certified by the persons having the custody of them, would be receiv-

ed as evidence in the courts of that country, that would not make them evidence in our courts—examined or sworn copies would be required here.—1 Greenl. Ev., §§ 483-4-5, and 493, and the cases there cited; Jackson *ex dem.* Bogert v. King, 5 *Cow.* 237-8; Lewis et al. v. Marshall et al., 5 Pet. 470-2; *Doe ex dem.* Warren v. Aaron Bray, 8 B. & Cress, 813, reported in 15 Eng. Com. Law Rep. 339; 3 vol. Phillips Ev., C. & *Hill's* notes, note 786, p. 1149; 2 vol. same work, p. 616, note 464. But, all these objections out of the way, these registers do not show any relationship between the persons therein named, and the said Christopher Vanner. Furthermore, there is no proof that identifies the defendant as the person mentioned in these alleged registers. These registers, if properly admitted, are no proof of identity; this fact must be established by other evidence. —1 Greenl. Ev., § 493, and note 1; Beib v. Barlow, 1 Doug. 170; Bain v. Mason, 1 C. & P. 202, and note; Wedwood's case, 8 Greenl. 75.

5. The evidence establishes that Christopher Vanner was a naturalised citizen, and, therefore, whether the defendant be the nephew of said Vanner or not, he cannot recover in this case, because, on Vanner's death, the estate vested immediately in the plaintiff as heir at law, and the act of the Legislature cannot deprive her of it. She is a citizen, and, at Vanner's death, was his next of kin, not an alien, capable of taking the inheritance, and it makes no difference whether the common ancestor of the said Vanner and the plaintiff, or those through whom the relationship is derived, be aliens or citizens, because, she takes, not by the common law, but by virtue of our statute of descents, by which, all the common law canons of descents are abolished. The plaintiff is not required to prove the citizenship of Christopher Vanner by the record of his naturalization; as to her, presumptive evidence is sufficient.—Nolly v. Feniveck, 4 Rand. 532; Blyther, Lessee, v. Rochester, 7 Wheat. 545-6.

6. At the time the act of the 16th January 1844 was passed, the State had no such title in the premises, as, upon which, she could have sustained an action against the plaintiff in error to recover the same, and, if so, then the act would give no such title to the defendant in error. No legal operative title could, in any event, vest in the State until office found, (Clay's Dig. 189, § 4-5,) and consequently none vested in the defendant in error by

virtue of the act alone.—Jackson v. Adams, 7 Wend. 367. The evidence shows that Christopher Vanner was a citizen; he had therefore an estate of inheritance in the premises, which he was capable of transmitting to his heirs. It did not vest (as in case of an alien,) upon his death, by force and operation of law, in the State, (it it be held that she can take in this case by escheat) but it descended to his heirs, if he had any, and, therefore, the State had no right to enter upon and dispose of the premises until after office found, and any grant made of such lands, whether by patent or otherwise, conveys no title.

ORMOND & NICHOLSON, for the defendant:

1. The case shows that Vanner, the person last seized of the land in controversy, was an alien, and died in possession without having sold or transferred it, and as at common law, the land escheated to the king in such a case without office found, in this country it vests in the people by operation of law as the sovereign.—Co. Litt. 2 *b*; Fairfax v. Hunter, 7 Cranch, 603; 4 Kent's Com. 424. This is the recognised principle of American law in all the States of the Union.—See the note to the last edition of Kent's Com. 424. The argument on the other side, that the lands of aliens escheat to the United States, is wholly without foundation. Escheat was a consequence of the *feudal tenure* by which all lands were held of some superior, but these lands were never held under the U. States Government; nor can the U. S. Government hold lands, even as a proprietor, within the limits of a State, without the consent of its Legislature.—Const. U. States, 8th section, 16th clause. This is certainly true of the old States, and the new States, after a sale of its lands by the Government, are placed in all respects on the same footing.

2. The estate of alien being thus vested by operation of law, in the State, it might dispose of it to whom it pleased.—Fairfax v. Hunter, 7 Cranch, 603; Hubbard v. Goodwin, 3 Leigh 492; Bartlett & Waring v. Morris, 9 Port. 266; Cong. Church v. Morris, 8 Ala. 182.

3. The estate of the alien, upon his death, being vested in the State of Alabama, by operation of law, what is the effect of the act of the Legislature of 16th January 1844? (Pamphlet Acts, 56.) The first section of the act makes the defendant in error capable of inheriting the real estate of C. Vanner in the same

38

manner as if the deceased, and all persons through whom the defendant in error claims title, were native born citizens. The defendant in error claims title as the nephew of C. Vanner. This is established by the deposition of Malempre, which establishes the fact that the mother of defendant in error was the sister of Vanner—*Doe ex dem.* Northey v. Harvey, R. & Moody, 297; (21 Eng. Com. Law;) *Doe ex dem.* Fuller v. Randall, 2 M. & Payne, 20; (17 Eng. Com. Law;) Vowler v. Young, 13 Ves. 147; Jackson v. Cooley, 8 Johns. 128; Jackson v. Browner, 18 ib. 37; Greenl. Ev., 103-4-5-6-7.

4. But the second section of the act refered to is a complete grant from the State to Malempre, and renders any proof of his being the nephew of Vanner wholly unnecessary.

5. The circumstances relied on to prove that Vanner was a citizen are wholly insufficient for that purpose. No fact is proved authorising such a presumption, of which, if the fact exists, there must exist record evidence. The case of Nolle v. Fenwick, 4 Rand. 585, shows what kind of circumstances will authorise such a presumption.

6. But if it were established that Vanner died a citizen, his real estate, nevertheless, escheated to the State, unless he left "lawful heirs." The defendant claims to be the cousin of Vanner, but to make out this relationship, she must claim by right of representation through the common ancestor of herself and Vanner, their grandfather, and as it is admitted that the family were all Germans, and as title cannot be deduced through an alien ancestor, she is not a lawful heir of Vanner.—Levy v. McCarter, 6 Pet. 102; Jackson v. Green, 7 Wend. 333; Smith v. Zaner, 4 Ala. 99; Orr v. Haggood, 4 Wheat. 461.

7. As to the land which was patented to John Vanner, the brother of C. Vanner, it is sufficient to say that C. Vanner had been in possession of it sixteen years, and died in possession, and must, therefore, be considered the owner, at least, against one who deduces no title from John Vanner.

CHILTON, J.—This was an action of ejectment, brought by the defendant against the plaintiff in error, to recover a half section of land, composed of four eighty acre tracts adjoining each other in the corners of sections 27, 28, 33 and 34, in township 20, range 11, west, &c., in Tuskaloosa county.

Etheridge v. Doe ex dem. Malempre.

It was agreed in writing between the attornies, in the court below, to dispense with a jury, and that the circuit judge should determine upon the facts, as well as the law of the case, saving to each party the right to except to the admission or rejection of testimony, and to the judgment of the court. The court rendered judgment for the plaintiff below, upon the verdict which the presiding judge found in his favor.

1. We would remark, before proceeding to the consideration of the legal questions involved in the record, that as the attornies in the court below, by their agreement, dispensed with a jury and substituted the judge in their stead, the verdict which he has pronounced upon the facts is not any more the subject for our revision, than if it had been pronounced by the jury. In chancery causes, where the record must affirmatively show all the evidence necessary to sustain the decree, when the ground of objection to the decree is the want of such evidence, this court is required to scan it narrowly and determine whether the facts proved warrant the conclusion arrived at by the chancellor; but we know of no rule of law which requires of this court to revise the verdicts of the *common law* courts, and to set them aside, as not warranted by the testimony. The duty of determining the legal effect of granted facts is frequently devolved upon this court in common law proceedings, as on a demurrer to evidence, a special verdict, an agreed state of facts, or upon a charge predicated upon the whole testimony, when there is no conflicting proof that one or the other of the parties is entitled to recover.—7 Port. 258; 9 ib. 39; 6 Ala. 753; 13 ib. 713; 15 ib. 276. In all these cases, however, the court does nothing more than to apply what it conceives to be the law to the facts *as conceded,* and is not bound to educe from the conflicting or contradictory evidence a conclusion as to its preponderance on the one side or the other. There is another class of cases where the court may be required to pass upon the evidence, not as establishing a fact, but merely as conducing to prove an hypothesis upon which a charge is predicated. Such cases occur when all the proof is disclosed by the record, and a charge predicated upon it is refused as abstract, or where a charge, which was given erroneously, is attempted to be rendered harmless upon the same ground, as in Hughes v. Parker, 1 Port. 139—see Bradford v. Maberry, 12 Ala. 520; Clealand

v. Walker, 11 ib. 1058. No other case occurs to us at present where it is made the duty of the court to pronounce upon the facts, and we are of opinion that although the consent of the parties cures the error of the judge being substituted for the jury, yet such consent cannot place this court in the same cate-gory, and require that we should weigh the testimony and determine whether the facts have been correctly found. So far then as it respects the conclusions of fact, we do not esteem it our duty to revise the action of the primary court, but will confine ourselves to the propositions of law asserted by the court, as we think it but a fair construction of the agreement that the opinions of the judge below on the law, when applied to the facts as found by him, should be the subject of revision, in so far as such opinions may be the foundation of the judgment which he rendered.

2. Both the plaintiff and defendant claim under Christopher Vanner, deceased, who, as ascertained by the judge in his verdict, was an alien at the time of his death. It appears that one half of the land in controversy was granted by the United States to Christopher Vanner, and the other half to John Vanner, brother to Christopher, and who was also an alien; and that Christopher Vanner, after the death of John, which happened in 1821, occupied the whole of the premises down to the period of his death, having retained such possession for some fifteen years. On the 16th day of January 1844, the Legislature of Alabama passed an act, by the first section of which it is provided, " That Francis G. de Malempre, of the city of Tuskaloosa, is declared and made capable of inheriting the real estate, whereof Christopher Vanner, deceased, died seized and possessed, in the same manner as if said deceased, the said Malempre and all persons, through whom he may claim the same, were natural born citizens of the United States. Sec. 2. And be it further enacted, that all title, claim, interest and demand which this State might have in the lands, whereof the said deceased died seized and possessed, are hereby vested in the said Malempre."—Pamphlet Acts of 1843-4, p. 56. It is contended, on the part of the plaintiff in error, that this act of the Legislature is opposed to the 4th clause of the 8th section and 1st art. of the Constitution of the United States, which declares that the Congress of the United States shall have power to es-

tablish a uniform rule of naturalization, &c.   It is very clear, that Congress having exercised the power confered by this clause in the constitution, no alien can become a citizen except in the mode pointed out by the act, and that the States respectively cannot naturalize aliens, or entitle them to all the privileges of citizens, since by the second section of the fourth article of the Constitution, if made citizens in one State, they would be entitled to all the privileges and immunities of citizens of the several States, and thus each State would in effect legislate upon this subject for all the other States, which would be absurd. But although a State has no power under the constitution to make citizens aliens, yet it has the undoubted right to enact laws for the regulation of descents and succession to property within its limits.   This power has never been questioned, and we are of opinion that the law passed in the case before us, enabling Malempre to inherit and hold the property of Vanner, is but the establishment of a rule of descent as to the particular estate of which Vanner died seized and possessed, and consequently is not at all subject to the constitutional objection urged against it.—See Montgomery v. Dorion, 7 N. Hamp. R. 475, and cases cited.

3. It is further insisted by the Attorney for the plaintiff in error, that conceding John and Christopher Vanner to have been aliens at the time of ther death, and that the land in question escheated, still the State of Alabama acquired no right to it by virtue of the escheat, but that it became re-vested in the U. S. Government, by which it was granted by patents to them.   This position is rested upon the agreement and cession between the United States and Georgia of 24th April 1802, by which the United States acquired this territory, and by the ordinance adopted by the framers of the Constitution of this State, on the 2d August 1819, by which the State of Alabama disclaims all right and title to the waste and unappropriated lands lying within her limits, &c.; and the counsel cites us to authorities to show that in England, when the blood of the person last seized became extinct and the title of the tenant in fee failed.for want of heirs, or by other means, the land reverted back to the original grantor, from whom it proceeded, or to his successors or descendants. Now, whatever may have been the doctrine of England with regard to escheats, founded as it was upon the feudal tenures, we

feel satisfied that under the peculiar organization of our Federal and State Governments, and the relation which they bear to each other, this doctrine of reversion to the original grantor or proprietor does not obtain with us. It may be, that anterior to the period when Alabama was admitted as a State, and while the U. S. Government exercised jurisdiction over this country as a territory, escheated lands would have belonged to the United States.—See Williams v. Wilson, M. & Yerg. 248, but it is clear that after the admission of Alabama into the Union, such lands must necessarily vest in the State, as the sovereign within whose jurisdiction they escheat. The law regulating the succession to the estate emanates from the State of Alabama, and the State has the power to determine, in cases where there are no heirs, who by the general laws of descent can take, in whom the title shall vest. In the case before us, the State has declared that all the title, which vested in it to the lands of which Christopher Vanner died seized and possessed, shall vest in the defendant in error. When the United States sold the land in controversy, and issued patents therefor in accordance with law, the title became vested in John and Christopher Vanner to the parcels respectively granted to them; for although they were aliens, still they could take land by purchase and hold it until office found. —Jenkins v. Noel, 3 Stew 60; Smith v. Zaner, 4 Ala. 99; Com. Dig. Alien, c 4. An alien can also convey, and may bring an action to recover the possession.—Ib; see also, Shep. Touchstone, 232; 1 Mass. 256; 7 Cran. 603-20; 6 Johns. Ch. 366; 12 Mass. 143. In Montgomery v. Dorion, 7 N. Hamp. 481, it is said, if an alien purchases lands and die, the lands immediately vest by escheat in the State without any inquest of office.—Co. Litt. 2 b; 6 Johns. Ch. 366. Chancellor Kent holds the same doctrine. He says, whenever the owner dies without leaving any inheritable blood, or if the relations whom he leaves are aliens, there is a failure of competent heirs, and the lands vest immediately in the State by operation of law, and that no inquest of office is requisite in such cases.—Citing 4 Co. 58 a, and · Comyn's Dig. Tit. Prerog. d 70. True, we have a statute as to the manner of taking the inquest and administering by escheators upon the estates of persons dying intestate, without heirs, (Dig. 189,) but we are of opinion that there is nothing in the statute, which prevents the title from vesting in the

State *eo instanti* the party dies, and that it is competent for the State, by special enactment, to vest the same in a third party. The title cannot be in abeyance.

4. But a question is raised upon the construction of this act of the Legislature, namely, that its effect is merely to remove the disability of alienage, under which Malempre, and those under whom he claimed, labored, thus leaving him to prove that he is heir to the decedent. We are strongly urged by the counsel for the plaintiff in error to adopt this construction. We think it more than probable that the act was passed, under the apprehension on the part of the Legislature that, the disability of alienage out of the way, Malempre would succeed to the estate by inheritance as the next of kin to Christopher Vanner. But if we place upon the act a construction which thus restricts its operation, how can we give effect to the second section, which declares that the title and claim of the State are thereby vested in said Malempre. This section contains a Legislative grant, and as between the State, the owner of the land, and Malempre, to whom it is granted, it amounts to an unconditional investiture of title in the latter, if the State had the title. The Legislature not only say that he may inherit the land, as though he and all the parties under whom he may claim were natural born citizens, but the act goes further, and actually vests the title which the State had in him, not on condition that he should establish his heirship, but absolutely. It is not for the court to say that the act was passed under a misconception of the facts; it is sufficient that the State has vested the title in him by language so unambiguous as to leave no room for speculation as to its meaning.

5. The circuit judge was of opinion that the act in question passed a title to Malempre, not only to the lands of which Christopher Vanner died seized and possessed, but also to the lands patented to John Vanner, which Christopher had occupied some fifteen years before his death, but of which there was no evidence of a legal seizin in him. Without stopping to enquire whether any length of possession would have given him a title as against the State, it is perfectly clear that possession for fifteen years did not. So far then as this record discloses, Christopher Vanner, although possessed of the land patented to John Vanner, had no shadow of title to it, since, as we have seen, both of them were aliens, and he could not have taken it by inheri-

tance. Upon the death of John Vanner, the portion granted to him escheated to the State, and as the State and not Christopher was seized of it in law at the death of Christopher, it is clearly not embraced in the grant to Malempre. We think it is clear that the court below erred in adjudging it to him.

6. In answer to the argument that when the Government grants land to an alien and his heirs, we must imply that it confers with the grant the power to enjoy and transmit it, we need only say, that however true this may be as applicable to Legislative grants and donations, it does not hold good as to ordinary purchases of the public domain by an alien from the ministerial officers of the Government, appointed to sell lands and issue patents for the same.

For the error above noticed, the judgment is reversed and the cause remanded.