25 Cal.2d 697 (1944)
Estate of CARL A. LINDQUIST, Deceased. UNITED STATES OF AMERICA, Appellant,
v.
THE STATE OF CALIFORNIA, et al., Respondents.
S. F. No. 16883. 
Supreme Court of California. In Bank. 
Dec. 30, 1944.
 Francis M. Shea, Assistant United States Attorney General, Frank J. Hennessy, United States Attorney, W. F. Mathewson, Assistant United States Attorney, and Leavenworth Colby, Attorney, Department of Justice, for Appellant.
 Robert W. Kenny, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondents.
 SCHAUER, J.
 The United States of America has appealed from "the Decree of Settlement of Final Account and of Final Distribution" in the estate of Carl A. Lindquist, deceased, "distributing the residue of the estate of the decedent to the State of California under the provisions of Section 1027 of the Probate Code of the State of California, and denying *700 the claim of the United States of America for distribution of said residue under the provisions of Section 450 of Title 38 of the United States Code." A hearing was granted by this court, after decision by the District Court of Appeal, First Appellate District, Division One, for the purpose of giving further study to the problems presented and in order to provide a decisive precedent for guidance in the settling of similar controversies which it has been suggested would otherwise arise in the future. After such study we have concluded that the opinion of the District Court of Appeal, prepared by Mr. Justice Ward, correctly treats and disposes of the issues involved, and it is therefore, with further discussion concerning one phase of the matter which was the subject of an added memorandum of authorities before us, adopted as and for the opinion of this court. Such opinion (with appropriate deletions of introductory and conjunctive matter as indicated) is as follows:
 "[ ] Lindquist, a veteran of the United States Navy, was declared incompetent and the Pacific National Bank of San Francisco was appointed guardian of his estate. Shortly thereafter the Veterans' Administration awarded him a pension under the provisions of the act of August 13, 1935, ch. 521, 49 Stats. 614 (38 U.S.C. 368) in the amount of $60 a month, and this was regularly paid to the guardian. At the time of the veteran's death his estate, consisting entirely of an unexpended balance of pension payments and amounting to the sum of $1,445.87, was turned over to the public administrator, and the Superior Court of the State of California in and for the City and County of San Francisco sitting in probate ordered distribution of the residue thereof to the State of California as escheated property. (Cal. Prob. Code, 1027.)"
 "The main question presented is the construction of section 450(3) of title 38, U.S.C. The respondents contend that the act purports to lay down a rule of succession to property--a matter in which the federal government is without authority. The act so far as pertinent here provides as follows: 'Where any payment of compensation, adjusted compensation, pension, emergency officers' retirement pay, or insurance under any Act administered by the Veterans' Administration is to be made ... to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the *701 State of residence of claimant, or is otherwise legally vested with the care of the claimant or his estate. ..."
 " 'Authority is granted for the payment [from funds so derived] of any court or other expenses incident to any investigation or court proceeding for the appointment of any guardian, curator, conservator, or other person legally vested with the care of the claimant or his estate or the removal of such fiduciary and appointment of another, and of expenses in connection with the administration of such estates by such fiduciaries, or in connection with any other court proceeding hereby authorized, when such payment is authorized by the Administrator. ..."
 " 'Provided further, That any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers' retirement pay, or pension, payable under said Acts, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans' Administration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance, or pension.'"
 "The state contends that the pension was an outright, absolute and complete gift; that the statute above uses the term 'escheat' in a technical sense to mean succession to property where there are no heirs; and that the statute constitutes an attempt by the federal government to regulate the laws of succession of this state as to a particular type of property. It is admitted that the federal government has no power to pass laws regulating succession to property by citizens of the states, that being a power reserved by the Tenth Amendment to the states."
 "The appellant contends that the word 'escheat' as used in the statute does not have the technical, limited meaning urged by the respondents; that when the statute is read as a whole it has a broader meaning; that the obvious purpose, intent and meaning of the statute is that the federal government has not *702 made the gift of a pension absolute and complete, but has retained in itself a contingent reversionary interest--that is, if the pensioner die possessed of any portion of the gift, and if he has not by will disposed of the interest, and if under the laws of the state the gift would otherwise escheat to the state, then the reversionary contingent interest of the federal government will vest."
 [1] "The word 'escheat' under the old English feudal system relating to the lapsing or reversion of lands to the ford of the fee upon a failure of heirship has survived but outgrown its restricted meaning. The custom or practice was originally confined to land, but its scope has been enlarged to include personal property. (19 Am.Jur., p. 383, 5.) In the case of In re Melrose Ave. in Borough of the Bronx, 234 N.Y. 48 [136 N.E. 235, 237, 23 A.L.R. 1233], the court, in an opinion delivered by Justice Cardozo, said: 'Escheat, as it survives in the Constitution of New York, preserves the name but ignores the origin of its feudal prototype. In origin it was an incident, not of sovereignty, but of tenure.' 'Escheat to-day is not the privilege of one, but the collective right of all when the individual right has failed.'"
 "In the United States, a state or some governmental agency is ordinarily the beneficiary of an escheat. In Canada, a province succeeds unless the Dominion by statute provides to the contrary. 'As between the country or state of domicil and the country or state in which the property is located, real property escheats to the country in which the property is found, since every sovereign state has dominion over the land within its borders. In England it has been held that the personal property of an intestate dying without heirs, located in a foreign country, escheats to that country, and not to the country of domicil of the owner, the maxim "mobilia sequuntur personam" not applying, because the right claimed is not in the nature of a succession. However, in the United States it has been held that the state is not entitled by escheat to unclaimed property owned by non-residents within the state.' (19 Am.Jur., p. 382, 3.) The United States Government, in dealing with objects of its bounty, by statutory provision has applied the principle of escheat. In Tax Commission of Ohio v. Rife, 119 Ohio St. 83 [162 N.E. 390, 391], involving the question of exemption from taxation of insurance payable under an act of Congress *703 known as the World War Veterans' Act, the following is set forth: ' "That the compensation, insurance, and maintenance and support allowance payable under titles II, III, and IV, respectively, ... shall be exempt from all taxation ..." 43 Stats. at L. 607, 613, c. 320, sec. 22, June 7, 1924 (38 U.S.C.A., 454)'; ' "that in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917." 43 Stats. at L. 1302, 1310, c. 553, sec. 303, March 4, 1925 (38 U.S.C.A., sec. 514).' The court said, pages 392-393: 'It is to be noted that there shall be no escheat to the state of Ohio, as would be the case in the event the state statutes controlled entirely; but by the Act of March 4, 1925, the insurance shall not be paid to the estate of the insured, but shall escheat to the United States and shall be credited to the United States government life insurance fund or the military and naval insurance appropriation, as may be appropriate. ... This right to take this property is by virtue of a contract between the United States government and the soldier, and does not arise by reason of the statutes of descent and distribution of this state, even though the government has seen fit to distribute such fund through the agency of an administrator acting under the statutes of descent and distribution of the state of Ohio."
 " 'It is reasonable to assume that the purpose of Congress in making the payment to the administrator of the deceased soldier was for the benefit of the government, to relieve the government of the necessity of selecting and determining the next of kin of the deceased soldier to whom payment should be made, and to place this burden upon the administrator appointed in the state of the soldier's residence. The administrator becomes a mere trustee or conduit for the government to make the payments to the persons entitled to the same under the provisions of the federal law. The intestate laws do not operate upon the decedent's property, but are referred to in order to determine who shall take the proceeds of the insurance. Congress had a right to adopt the course of descent prevailing in the state of the residence of the soldier, and the proceeds of the insurance therefore pass under the federal act, the intestate laws of Ohio being adopted as *704 a standard or guide for ascertaining the next of kin to whom payment shall be made.'"
 [2] "The deceased [ ] herein had no vested right to a pension. In Abbott v. Morgenthau, 93 F.2d 242 [68 App. D.C. 83], a case quite similar to the present, accumulated pension payments made to a guardian who had signed an application for his incompetent ward's admission to a veterans' home, were involved. At page 245, the court said: 'It must be borne in mind that Folley had no vested interests or rights in the pension money. He had no vested legal right to a pension at all, for, as has been said time and time again, pensions are bounties which Congress has the right to give, to withhold, to distribute, or to recall, at its discretion. When, therefore, it is considered that Congress could annex whatever conditions it pleased, whenever it pleased, to the grant or the gratuity, it seems to us clear that it was competent for Congress to say, as it did say, that, if anyone enjoyed the benefits of the home and was still a member of the home at the time of his death, his accumulated pension money should be distributed in a particular manner. Indeed, the provision in the act for distribution of the balance to certain limited relatives of the deceased pensioner was itself but another gratuity, and since, as we have pointed out, there is and can be no dissent to the proposition that Congress may give, withhold, distribute, or recall and change at will its gratuities, it seems beyond dispute that when it does so it is the duty of the courts to give effect to the congressional purpose.' (Writ of certiorari denied 303 U.S. 638 [58 S.Ct. 526, 82 L.Ed. 1098].)"
 [3] "The laws of the United States dealing with matters within its jurisdiction are supreme 'and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' (U.S. Const., art. VI, par. 2; [People ex rel. Happell v. Sischo (1943), 23 Cal.2d 478, 491 [144 P.2d 785, 150 A.L.R. 1431].]) Upon the state courts is often imposed the duty of enforcing federal laws, and in this connection they are likewise called upon to determine their constitutionality. If the terms of an act are constitutional, and due process is complied with, state agencies, judicial or otherwise, may with propriety and to the great convenience of the federal government lend their and in their enforcement. Laws of the United States, when *705 constitutional, are binding upon state courts (Tax Commission of Ohio v. Rife, supra, 119 Ohio St. 83 [162 N.E. 390, 393]), and should not be viewed as emanating from a foreign jurisdiction. The principle of cooperation, not competition, should be followed. (Miller v. Municipal Court, 22 Cal.2d 818 [142 P.2d 297].) Congress is required to establish adequate and exact standards for the practical administration and reasonable enforcement of an act, and, Congress having done so, the state courts should assist and cooperate in any policy declared for all the states. (Miller v. Municipal Court, supra.)"
 [4a] "That unexpended pension money, under the conditions enumerated in the statute, should be returned to its source and be used in further aid of veterans, is eminently just and equitable, and state agencies should accept the burden of aiding in the enforcement of the act unless the method of return is contrary to constitutional provision. In Beaver v. Short, 300 F. 113, the power to legislate relative to property constituting a gift from, or within the provisions of, the federal government is held to be exclusively within such government."
 [5] "If not prescribed by statute, a formal contract is not required to bind one in the disposition of his property upon his death. (Keefe v. Keefe, 19 Cal.App. 310 [125 P. 929]; Barr v. Ferris, 41 Cal.App.2d 527 [107 P.2d 269]; Davis v. Jacoby, 1 Cal.2d 370 [34 P.2d 1026]; Wolf v. Donahue, 206 Cal. 213 [273 P. 547].)"
 [6] "There is no doubt that if the pension statute requires the pensioner to contract that in certain contingencies the unused pension fund shall revert to the donor, that such contract is valid, and that no formal consent by the pensioner or his guardian is required, the statute itself plus acceptance of its benefits constituting the contract. United States v. Stevens, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484], reversing Stevens v. United States, 89 F.2d 151, is similar to the present case except that in the Stevens case in his written application for admission to a national soldiers' home the applicant agreed that upon his death all of his personal property should pass to and vest in the board of managers of the home. (36 Stats. 736, 24 U.S.C.A., 136.) Basing its decision primarily upon the Tenth Amendment to the Constitutional the circuit court (89 F.2d 151) had held the act to be unconstitutional and *706 void. In United States v. Stevens, supra, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484], the question was concisely stated as follows (p. 624): 'Can the United States enforce a contract executed by an ex-soldier in order to obtain admission into the National Home for Disabled Volunteer Soldiers, which contract provides that upon the death of the veteran while a member of the home, all his personal property shall pass to the home subject to be reclaimed within five years by any legatee or person entitled to receive the property by inheritance?" The Supreme Court there said (pp. 626-627): 'The Court of Appeals was of the opinion that the Act of Congress authorizing the contract was void as an interference with the reserved rights of the state of the veteran's legal domicile when he died (Massachusetts) in that "it was at most but an attempt to make a future testamentary disposition of McGovern's property, when such a disposition could only be effected by will" ' and held (p. 628): 'Nothing in the record indicates that the agreement was not fairly and voluntarily entered into between the parties, or that it was inequitable, unjust or not upon valuable consideration. Both parties were competent to make the contract. This contract is valid and enforceable.' The statutory provision in the Stevens case specified 'all personal property'; that in the present, applies to funds derived from 'compensation, automatic or term insurance, emergency officers' retirement pay, or pension' only (Italics added.) If the federal government simply by statute can lawfully create a contract that requires all the personal property of the pensioner to be paid over in certain circumstances, it can also provide that as to the particular fund that is the subject of the gift, the donor retains a contingent interest. That is all the statute here involved attempts to do.
 [7] "The statute herein makes no provision for consent by the veteran; the pension, if accepted, must be held in accordance with the statutory provisions applying to a gift, bounty or periodical allowance, the granting of such pension being sometimes referred to as part consideration of a contract of employment, or as additional payment for past meritorious service. While in California it has been held that upon the granting of a pension to an employee a vested right accrues to the recipient, this simply means that the vesting is subject to contingencies, which may cause a discontinuance of payment, *707 such as conviction of a felony or an automatic decrease in amount (Douglas v. Pension Board, 75 Cal.App. 335 [242 P. 756]; Klench v. Board of Pension Fd. Commrs., 79 Cal.App. 171 [249 P. 46]; Jordan v. Retirement Board, 35 Cal.App.2d 653 [96 P.2d 973]) if the pension statute so provides. [8] Likewise, a legislative body may provide that an unexpended portion of an allowance may revert or escheat to a designated governmental body. (United States v. Stevens, supra, 302 U.S. 623 [58 S.Ct. 338, 82 L.Ed. 484].) This rule applies to pensions. (Abbott v. Morgenthau, supra, 93 F.2d 242 [68 App.D.C. 83].)"
 [9a] "The fact that the veteran herein had been declared an incompetent makes no difference in the determination of the issues involved. In the Abbott case, the veteran was insane and, as regards the absence of a requirement of consent, the court declared that 'It is a self-executing act.' In the present case the incompetent was represented by a duly appointed and qualified guardian. The receipt of the pension, a benefit to the incompetent, was one of the elements in a quasi contractual transaction which, it may be assumed, was approved by the superior court in the guardianship proceeding. The decree of distribution sets forth the appointment of the guardian, the award of the pension, the period of payment to the guardian and that the entire estate consisted of money received from the Veterans' Administration."
 [10] "California has no right, by virtue of its sovereignty, to escheat the funds herein merely because they are found within the jurisdiction of the state. (First Nat. Bank v. California, 262 U.S. 366 [43 S.Ct. 602, 67 L.Ed. 1030].) They were derived from the United States government as an absolute gift only in the sense that the guardian might have expended the full amount had it been necessary. The gift was limited to the extent that if the veteran died intestate and without heirs, any unexpended balance reverted to the donor. There is nothing inequitable in this provision of the federal statute. As between state and federal governments, there can be no question of the justice of the federal claim."
 "Had the veteran in this case not been declared an incompetent he could have confided his pension to the keeping of the treasurer of a veteran's home, reserving the right to withdraw and expend it as he desired, but with an agreement on his *708 part that if unexpended at the time of his death it should be retained by the home. In Mauck v. United States, 94 F.2d 745, using the Stevens case as authority, the court said (p. 746): 'It was pointed out in the Stevens case that the statute requiring the contract did not operate to invade the reserved powers of the state over the course of intestate descent and distribution, inasmuch as the law of the veteran's domicile, Massachusetts, permitted and enforced contracts directing the distribution of the promisor's property after his death."
 " 'Such is also the law in California. Nichols v. Emery, 109 Cal. 323, 41 P. 1089, 50 Am.St.Rep. 43; Booth v. Oakland Bank, 122 Cal. 19, 54 P. 370; Treadway v. Board of Directors, 14 Cal.App. 75, 85, 86, 111 P. 111, hearing by Supreme Court denied; Monsen v. Monsen, 174 Cal. 97, 99, 162 P. 90; cf. Cal. Civ. Code, sec. 1624, subd. 6; Levi v. Murrell, 9 Cir., 63 F.2d 670, 671.'"
 [11] "The entrusting of an incompetent petitioner's funds to the management of a guardian appointed by a state court has been recognized by the Congress of the United States as proper. (Hines v. Stein, 298 U.S. 94 [56 S.Ct. 699, 80 L.Ed. 1063].) The necessity of a guardian applying for a pension on behalf of an incompetent veteran is apparent. (World War Veterans' Act, 1924, 21; 43 U.S.Stats., pp. 607, 613.) Whatever terms of a contract the veteran would be compelled to make, expressly or impliedly, in order to obtain the pension, they bind the guardian with equal force."
 [9b] "The objection that the incompetent veteran cannot be considered as having consented to the condition of the gift is without merit. This conclusion is strengthened when the holding in Abbott v. Morgenthau, supra, 93 F.2d 242 [68 App.D.C. 83], is considered, namely, that the terms of the statute became operative upon the award and acceptance of the pension, and that formal consent to reversion of the unexpended funds was not necessary."
 [4b] "There is nothing unreasonable in the provision that the particular funds herein shall escheat to the federal government. The reference to 'funds ... which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State' is simply adopting, as regards the operation of escheat to the federal agency, the same rule that the state has adopted for itself. The method is a matter of convenience. There may be cases in which pension money *709 would escheat to the Veterans' Administration, and other property, real or personal, owned by the decedent, would escheat to the state. Respondents' contention that the pension money was paid to the deceased or his guardian without reservation that the United States could any longer assert control over it, is not well founded when the provisions of the pension act are given due consideration."
 "This opinion would be unduly lengthened if each of respondents' citations should be analyzed. None of them covers facts similar to those of this case. As an example, in Spicer v. Smith, 288 U.S. 430 [53 S.Ct. 415, 77 L.Ed. 875, 84 A.L.R. 1525], in which a living incompetent veteran was involved, whose guardian used as a depositary an institution which became insolvent, it was held that the guardian was not an agent of the United States, and that federal authority is not concerned in the depositary selected by him. No question of the right of escheat upon the death of the veteran was considered."
 "In Carrier v. Bryant, 306 U.S. 545 [59 S.Ct. 707, 83 L.Ed. 976], the court held that bonds of the United States purchased by a guardian on behalf of an incompetent veteran with 'payments of benefits' were not exempt from execution. At page 549, the court simply said, quoting from Trotter v. Tennessee, 290 U.S. 354 [54 S.Ct. 138, 78 L.Ed. 358]: 'We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises.' In this respect it is interesting to observe changes in the statute as noted in Culp v. Webster, 25 Cal.App.2d Supp. 759 [70 P.2d 273] and Lawrence v. Shaw, 300 U.S. 245 [57 S.Ct. 443, 81 L.Ed. 623, 108. A.L.R. 1102].)"
 "In Christianson v. King County, 239 U.S. 356 [36 S.Ct. 114, 60 L.Ed. 327], the court determined that territorial schemes of government for Washington territory properly included provisions establishing and defining the jurisdiction of probate courts. The failure of heirs resulted in an escheat to the county, but the opinion was not based upon an agreement of the deceased that, in the absence of testamentary disposition or heirs, the property should revert to the federal government. The right of succession to estates of deceased persons is a matter for state cognizance. Referring to 'escheat,' the Christianson case, page 366 [239 U.S.], said 'In the case of the Territories, *710 Congress could have dealt with this subject if it chose, but it did not see fit to establish a rule of its own.'"
 "There is an abundance of authority, statutory and judicial, to the effect that the state has control over the disposition of the property of a deceased within its jurisdiction, and the authority to determine the right of succession, but there is no constitutional provision that federal authority may not ordain as a condition to its grant that in a given contingency property shall escheat to a federal governmental agency."
 "In some instances a distinction has been drawn between real and personal property--a question not necessary to discuss here. Whatever constitutional rights the state possesses, it may not decree to one party or to one governmental agency property that was obtained by donation from another if there was an agreement, express or implied, that upon certain contingencies it should revert to the donor."
 "In determining the main question involved it must be borne in mind that the federal government has the right to grant pensions with reservations, as, for example, by providing for a reversion, as it did in the case before us. [12] A state escheat statute is based upon state sovereignty and is a direction for the devolution of property. It may not prevail over the United States Constitution or over a congressional act which does not deprive one of property interests without due process of law."
 [13] "[ ] The United States Government delegated the state government of residence of the deceased veteran to act in its probate capacity to determine intestacy and lack of kindred; it is therefore bound by the procedural methods adopted by such state. California statutes provide that property [provisionally] escheats to the state as of the date of the death of a decedent (Prob. Code, 231) and 'shall be held by the State Treasurer for a period of five years from the date of the decree making such distribution, within which time any person may appear in the superior court for the county of Sacramento and claim the estate or any part thereof.' (Prob. Code, 1027.) In view of the adoption by the federal statute of the state law on the subject of heirship, under the facts of this case the property may not revert to the donor, the United States or its agency, until the five-year statutory period allowed for claimant heirs has elapsed. [ ]"
 [14] Appellant, in the hearing before this court, has contended *711 vigorously that immediately upon entry of the decree of distribution it became entitled to receive possession of the property involved and that we should accordingly modify the order of the District Court of Appeal requiring that the money be held by the State Treasurer for the period of five years. We are satisfied, however, that such order is proper. Section 1027 of the Probate Code, above mentioned, which concerns the time at which escheated property shall finally vest in the state, provides that "Executors or administrators, public or otherwise, must apply for distribution of an estate at the time of filing a final account. ... If the court, at the time set for the hearing of the final account, or such time thereafter to which the matter may be continued, does not distribute the entire balance of the estate remaining for distribution to known heirs, devisees or legatees entitled to succeed thereto, it must distribute to the State of California that portion of such estate not distributed to such known heirs, devisees or legatees."
 "If the court distributes the estate or any portion thereof to the State of California, and the distributing clause contains words otherwise creating a trust in favor of certain unknown or unidentified persons as a class, such distribution shall vest in the State of California both legal and equitable title to the property so distributed; saving, however, the right of claimants to appear and claim the estate or any portion thereof, as in this section provided." After setting forth various procedural steps thereafter to be followed and specifying that claimants may assert their claims within five years from the date of distribution to the state, the section then concludes: "Any person who does not appear and claim, as herein required, shall be forever barred, and such property, or so much thereof as is not claimed, shall vest absolutely in the State." It thus appears that title to property distributed to the state pursuant to the provisions of section 1027 does not vest absolutely and unconditionally in the state, nor is the escheat complete, until the lapse of the five-year period without the appearance of claimants; theretofore the title held by the state is conditional and subject to divestment by the appearance of legitimate claimants. Thus until the five-year period has elapsed it cannot be finally determined whether the property will go to heirs of the deceased veteran or *712 whether the situation contemplated by the statute under which the federal government is now claiming--i.e., ultimate escheat to the State of California--will take place. As stated in Estate of Williams (1940), 37 Cal.App.2d 181, 186 [99 P. 2d 349], "The very purpose of the escheat statute is to permit heirs who were unknown at the time of distribution to subsequently establish their right to property distributed to the State for lack of 'known heirs'." Until expiration of the period during which such rights may be established it is substantially impossible for the United States to prove the fact which would make the reversionary provision of its statute operative (see State v. Smith (1886), 70 Cal. 153, 156-157 [12 P. 121]; People v. Roach (1888), 76 Cal. 294, 296-297 [18 P. 407]; State v. Miller (1906), 149 Cal. 208 [85 P. 609], which cases, although arising under a different statute, are analogically pertinent) and hence it is proper that the funds here involved be held by the State Treasurer. We have considered the cases of Lyeth v. Hoey (1938), 305 U.S. 188 [59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410], and United States v. Allegheny County (1944), 322 U.S. 174 [64 S.Ct. 908, 88 L.Ed. 1209], cited by appellant, but find nothing therein which would lead us to a contrary conclusion on this point.
 That portion of the decree appealed from which denied unconditionally the claim of the federal government to the residue of the estate of decedent is reversed, and the probate court is directed to amend its decree to provide that such residue shall revert and be paid to the United States of America upon elapse of five years from the date of distribution if the same has not theretofore been claimed by any legal heir pursuant to the laws of California.
 Gibson, C.J., Shenk, J., Curtis, J., and Traynor, J., concurred.
 CARTER, J.
 I dissent. In my opinion the provision in the federal statute (38 U.S.C. 450) providing for the escheat to the United States of funds belonging to the estate of a deceased veteran is in contravention of the Tenth Amendment to the Constitution of the United States and is therefore invalid. Under this amendment all powers not delegated to the United States nor prohibited to the states are reserved to the states. By this reservation the rights of sovereignty are guaranteed to the states by the Constitution. No act of Congress *713 can subtract an attribute of sovereignty from a state. Citation of authority is not necessary to demonstrate that probate jurisdiction over the property of a resident situated within a state is the exercise of the right of a sovereign.
 There are many authorities to the effect that the state has the sole and exclusive power over the disposition of property under its jurisdiction. (United States v. Fox 94 U.S. 315 [24 L.Ed. 192]; Sunderland v. United States, 266 U.S. 226 [45 S.Ct. 64, 69 L.Ed. 259]; United States v. Perkins, 163 U.S. 625 [16 S.Ct. 1073, 41 L.Ed. 287]; Beaver v. Short, 300 F. 113.) In the case of Hamilton v. Brown, 161 U.S. 256 [16 S.Ct. 585, 40 L.Ed. 691], the Supreme Court of the United States lays down the rule as follows (at p. 263):
 "By the law of England, before the Declaration of Independence, the lands of a man dying intestate and without lawful heirs reverted by escheat to the King as the sovereign lord; but the King's title was not complete without an actual entry upon the land, or judicial proceedings to ascertain the want of heirs and devisees. Attorney General of Ontario v. Mercer, L.R. 8 App.Cas. 767, 772, 2 Bl.Com. 245. The usual form of proceeding for this purpose was by an inquisition or inquest of office before a jury, which was had upon a commission out of the Court of Chancery, but was really a proceeding at common law; and, if it resulted in favor of the King, then, by virtue of ancient statutes, any one claiming title in the lands might, by leave of that court, file a traverse, in the nature of a plea or defence to the King's claim, and not in the nature of an original suit. Lord Somers, in The Bankers' case, 14 Howell's State Trials, 1, 83; Ex parte Webster, 6 Ves. 809; Ex parte Gwydir, 4 Maddock, 281; In re Parry, L.R. 2 Eq. 95; People v. Cutting, 3 Johns. 1; Briggs v. Light-Boats, 11 Allen, 157, 172. The inquest of office was a proceeding in rem; when there was a proper office found for the King, that was notice to all persons who had claims to come in and assert them; and, until so traversed, it was conclusive in the King's favor. Bayley, J., in Doe v. Redfern, 12 East, 96, 103; 16 Vin. Ab. 86, pl. 1."
 "In this country, when the title to land fails for want of heirs and devisees, it escheats to the State as part of its common ownership, either by mere operation of law, or upon an inquest of office, according to the law of the particular State. *714 4 Kent Com. 424; 3 Washb. Real Prop. (4th ed.) 47, 48." (Italics supplied.)
 (See, also, United States v. De Repentigny, 5 Wall. (72 U.S.) 211 [18 L.Ed. 627].) Even money deposited in the United States Treasury when an escheat occurs escheats to the state where it was originally situated. (United States v. Klein, 303 U.S. 276 [58 S.Ct. 536, 82 L.Ed. 840]; American Loan & Trust Co. v. Grand Rivers Co., 159 F. 775.)
 Statutes providing for escheat have been held to be part of the intestate laws of a state. (People v. Richardson, 269 Ill. 275 [109 N.E. 1033]; 29 Harv. L. Rev. 455.)
 This being the case it is all the more evident that there can be no federal escheat statute. Laws governing the devolution of property have always been the subject of exclusive state jurisdiction.
 There is only one exception to the rule that a state has exclusive control over the devolution of title to property located within its jurisdiction. This exception tends to prove the general rule. The exception is in the case of the property of restricted Indians whose property is held in trust for them by the government. In the case of such property the courts have held that:
 "Restricted Indian lands do not become subject to the operation of the laws of the state until all restrictions from the right of the allottee to alienate have been removed and relinquished by the Congress." (Beaver v. Short, 300 F. 113.)
 In the instant case, the veteran is not to be treated as a restricted Indian. There are no restrictions on his right to alienate his property and the government does not hold it in trust for him.
 The fact that the money in the estate was derived from the United States does not change the general rule, that the state escheat statutes control property situated within the state. (Etheridge v. Doe, 18 Ala. 565.)
 It has been held by the Supreme Court of the United States and by the courts of several states that when money is paid to a veteran pursuant to a pension, title vests in the recipient and the United States has no right or interest in said money. (Spicer v. Smith, 288 U.S. 430 [53 S.Ct. 415, 77 L.Ed. 875, 84 A.L.R. 1525]; Carrier v. Bryant, 306 U.S. 545 [59 S.Ct. 707, 83 L.Ed. 976]; United States Fidelity & Guaranty Co. v. Montgomery, 226 Ala. 298 [146 So. 528]; State ex *715 rel. Smith v. Board of Commissioners, 132 Kan. 233 [294 P. 915] (certiorari denied, 283 U.S. 855 [51 S.Ct. 648, 75 L.Ed. 1426].)
 In Spicer v. Smith, supra, the Supreme Court of the United States speaking through Mr. Justice Butler stated that the very escheat provision of the federal statute was evidence that title to the money had passed to the veteran.
 The fact that the money was paid to a guardian does not alter the situation. The intervention of a guardian does not leave the pension funds in the hands of the government but, when paid to the guardian, the title and possession have both passed from the government. (State ex rel. Smith v. Board of Commissioners, 132 Kan. 233 [294 P. 915] (certiorari denied, 283 U.S. 855 [51 S.Ct. 648, 75 L.Ed. 1462]).)
 This rule is best expressed by the Supreme Judicial Court of Massachusetts, in the case of Kellogg v. Waite, 12 Allen (Mass.) 529. The pertinent portion of this decision reads as follows:
 "It is undoubtedly competent for the United States to attach such conditions as they may see fit to the grant of a pension, and to fix by law the time and manner in which the property shall finally pass to the pensioner. But when this money was paid to the agent of the principal defendant, by her consent, and in conformity with the existing provisions of law, it became her property, and created a debt from the agent to her, over which the United States government had no longer any control or jurisdiction. It was no longer, in the language of the statute of 1866, 'a sum of money due or to become due to any pensioner under the laws of the United States.' It had been paid, and was received by her in the manner she had chosen. It could not be recalled by the government, nor could its disposal be qualified or in any manner limited or abridged." (Italics supplied.)
 The pension money in the estate of the deceased had been his money. He had both title and possession and the money itself was within the jurisdiction of the California courts and subject to its statutes.
 In support of its conclusion that the federal escheat statute will prevail over the state escheat statute, the majority opinion relies in part on the case of Tax Commission of Ohio v. Rife, 119 Ohio St. 83 [162 N.E. 390]. This case involved the proceeds of a war risk insurance policy. Under the law and the *716 contract, payments under the contract of insurance were not subject to inheritance taxes. The court held that the beneficiaries named in the policy took under the contract and not by reason of the statutes of descent and distribution, and therefore the inheritance tax did not attach. In the instant case, however, the State of California is taking under its statutes of distribution and the United States is attempting to take the funds involved not by reason of any contractual relationship between the deceased and the government, or by virtue of any trust impressed upon the money, but by virtue of a statute of distribution which the Congress was powerless to enact. The Ohio case points out this provision in the following language:
 "This right to take this property is by virtue of a contract between the United States government and the soldier, and does not arise by reason of the statutes of descent and distribution of this state, even though the government has seen fit to distribute such fund through the agency of an administrator acting under the statutes of descent and distribution of the State of Ohio." (Tax Commission of Ohio v. Rife, supra.)
 Reliance is also placed upon the case of Abbott v. Morgenthau, 93 F.2d 242. (Certiorari denied 303 U.S. 638 [58 S.Ct. 526, 82 L.Ed. 1098].) This is another case involving a contract between the government and the veteran. The veteran entered a soldiers' home. Upon entering the home the veteran agreed that " 'The balance due the pensioner at the date of his death shall be disposed of as directed by Act of Congress approved July 1, 1902'." The statute was amended in 1910. The court held that the 1910 amendment did not affect the contract and that as the claimant was not entitled to take under the 1902 statute, he balance of the pension money on deposit with the home should be paid into the federal treasury in accordance with the 1902 statute and the contract. There is dicta in the cited case to the effect that there is "no vested legal right to a pension at all, for, as has been said time and time again, pensions are bounties which Congress has the right to give, to withhold, to distribute, or to recall, at its discretion." I am disposed to agree with this dicta. "To recall" a pension means to repeal the act so that the pension does not continue. I know of no case in which, in the absence of fraud, an attempt is made to recover title *717 to pension money once the pensioner has taken title and possession of the same.
 The statute relied on by appellant in the instant case does not attempt to distribute or recall the pension. What it does is to attempt to engraft an escheat statute on the substantive law of the State of California contrary to the state law and in violation of the Tenth Amendment to the Constitution.
 Beaver v. Short, 300 F. 113, is likewise relied upon by the majority opinion. This case provides the only exception to the rule that a state has exclusive control of the devolution of title to property located within its jurisdiction. This exception tends to prove the general rule. The cited case concerned the property of restricted Indians whose property was held in trust for them by the government. In case of such property the court held that:
 "Restricted Indian lands do not become subject to the operation of the laws of the state until all restrictions from the right of the allottee to alienate have been removed and relinquished by the Congress." (Beaver v. Short, supra.)
 In the instant case the veteran is not to be treated as a restricted Indian. The Congress has impressed no restrictions on his right to alienate his pension award and the government does not hold the same in trust for him. He can do as he pleases with the money--spend it, give it away, or throw it away.
 The fact that the money in the estate was derived from the United States does not change the general rule, that the state escheat statutes control property situated within the state. (Ethridge v. Doe, 18 Ala. 565.)
 The majority opinion, hovewer, relies principally on the case of United States v. Stevens (1938), 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484].
 The cited case is analogous to the case at bar. The rationale of the decision, however, supports the position of the respondents in this case. In the Stevens case the veteran died an inmate of a federal veterans' home. By statute (24 U.S.C. 136) and as a prerequisite to admission to the home, inmates were required to turn over to the home all property which the inmate did not dispose of by will, and upon death the property was to vest in the board of managers of the home. The inmates were required to execute a written contract *718 which embodied the statutory requirements. In the Stevens case such a contract was executed. Upon the death of a veteran inmate the United States sued his administratrix for the proceeds of the estate. The Circuit Court of Appeal (89 F.2d 151) held that the statute and contract were in violation of the Tenth Amendment to the Constitution as an interference with the reserved rights of the state.
 The Supreme Court in reversing the Circuit Court of Appeal stated:
 "This contract, however, is valid under the applicable state law. ..."
 "During the life of the veteran, his property was his own to dispose of as he desired; ..."
 "In passing the Act of June, 1910, Congress merely directed the terms and conditions under which veterans, consistently with state law, can obtain admittance to Homes built, maintained and operated by the government for the benefit of veterans. Homes for the aged, needy, or infirm, in return for the benefits bestowed by them, generally receive some benefit from any property or estates of their members." (Italics supplied.) (United States v. Stevens, supra.)
 The decision just cited is based upon the proposition that the veteran's property is his own, to be dealt with as he sees fit. If he chooses to become an inmate of a veteran's home, he does so by contract and the home succeeds to the veteran's property by virtue of a contract with the veteran made and enforced in acordance with the laws of the state.
 All of the important cases relied upon by the majority opinion in arriving at its determination are cases based upon contracts between the veteran and the government, either insurance contracts or domiciliary contracts. In each of these cases the government took, not by virtue of an escheat law, but by reason of a contract with the veteran.
 In the instant case the government attempts to take under an escheat statute. If the government is entitled to the money in question under a contract, it would have established its right in a plenary action by the filing of a claim and the institution of a suit. However, recognizing that its right is not based upon contract, it appeared in the probate proceeding and asked for distribution of the estate under the federal escheat law.
 In my opinion the federal government cannot prevail because *719 escheat statutes are part of the laws providing for the devolution of title to property located within the jurisdiction of a state. Such laws are part of the sovereign powers of a state, reserved to the state under the Tenth Amendment to the Constitution of the United States.
 In my opinion the decree should be affirmed.