### UNITED STATES TRUST CO. OF NEW YORK v. HICKS, Alien Property Custodian, et al.

(District Court, S. D. New York. July 3, 1925.)

1. War ⟜12—Status of German legatee of nonenemy claimant of money in hands of Alien Property Custodian, who died since the peace treaty with Germany held not that of an enemy, but of an alien friend. (Trading with Enemy Act, § 9(a) (d), as amended by Act March 4, 1923 [Comp. St. § 3115½e].)

In a suit under Trading with the Enemy Act, § 9 (a) (d), as amended by Act March 4, 1923 (Comp. St. § 3115½e), by the legal representation of a deceased claimant of money in the hands of the Alien Property Custodian, who was a nonenemy and entitled to return of the money, and who died since the treaty with Germany of August 25, 1921, the fact that a legatee entitled to a part of the money as distributee under the will of decedent is a German citizen *held* not to subject her to the proviso requiring the giving of security for redelivery of the property, but her status is that of an alien friend, entitled to the money without condition.

2. War ⟜12—Status of nonenemy property held by Alien Property Custodian not affected by its acquisition since the peace treaty by German citizen.

The joint resolution of July 2, 1921, and the treaty with Germany of August 25, 1921, dealt only with property held by the Alien Property Custodian which at that time belonged to enemies, and not with nonenemy property, which might subsequently be acquired by German citizens.

In Equity. Suit by the United States Trust Company of New York, as ancillary administrator with the will annexed of Fred-

erick Wesche, deceased, against Frederick C. Hicks, Alien Property Custodian, and another. On motion to dismiss bill. Denied, and decree for complainant.

Selden Bacon, of New York City, for plaintiff.

Emory R. Buckner, U. S. Atty., of New York City, and Dean Hill Stanley, Sp. Asst. Atty. Gen., for defendants.

GODDARD, District Judge. Prior to the end of the war, the Alien Property Custodian demanded, as enemy property, and there was turned over to him, certain cash and securities, amounting to some $500,000, on deposit with the Commercial Trust Company of New Jersey in the joint names of Frederick Wesche and Helene J. Von Schierholz. The entire fund was demanded by the Alien Property Custodian as the property of Mrs. Von Schierholz, an American woman, who had lost her citizenship by marriage many years before the war, and who was living in Germany and therefore was an enemy. It subsequently developed that part of this property belonged to others, and it was returned to them, with the exception of the balance now remaining, which belonged to Wesche.

No contention has ever been made that Wesche was an enemy, and in fact it is conceded that it would have been returned to him, but for his death, which occurred on June 20, 1922. Wesche left a will, executed June 10, 1922, by which he bequeathed three-fourths of his property to Lucie Frost, a French woman, who was and always has been a nonenemy. The remaining one-fourth was bequeathed to Wesche's married sister, Amalie Flohr, a German, resident of Cologne, before and throughout the war, and still a resident there. The three-fourths bequeathed to Lucie Frost was delivered to the plaintiff, as ancillary administrator of Frederick Wesche, deceased, it having duly qualified as such administrator; but the government refuses to deliver to the plaintiff the remaining one-fourth bequeathed to Amalie Flohr, unless the plaintiff files with it a bond, on the ground that Mrs. Flohr is an enemy.

The plaintiff declines to file such a bond, and has brought this suit as ancillary administrator of Frederick Wesche, deceased, against the Alien Property Custodian and the Treasurer of the United States, under the terms and provisions of subsections (a) and (d) of section 9 of the Trading with the Enemy Act, as amended March 4, 1923 (Comp. St. § 3115½e).

The defendants have filed a motion to dismiss the complaint, the grounds for the motion being as follows:

"(1) It appears affirmatively from the allegations of the bill of complaint that the money and other property which the plaintiff seeks to recover from the defendants is distributable to a person not eligible as a claimant under subsections (a) and (c) of section 9 of the Trading with the Enemy Act, as amended.

"(2) It appears affirmatively from the allegations of the bill of complaint that the person to whom the property sought to be recovered is distributable is an enemy within the meaning of the definition of the word 'enemy' as used in the Trading with the Enemy Act, as amended.

"(3) It appears affirmatively from the allegations of the bill of complaint that the plaintiff is unwilling to comply with any conditions by way of security or otherwise, as the President or the court, respectively, shall deem sufficient to insure that the plaintiff will redeliver to the Alien Property Custodian such portion of the money or other property sought to be recovered as shall be distributable to any person not eligible as a claimant under subsections (a) and (c) of section 9 of the Trading with the Enemy Act, as amended.

"(4) The plaintiff has not stated facts sufficient to entitle it to equitable relief under section 9 of the Trading with the Enemy Act, as amended."

In so far as material to this case, subsection (a) of section 9 provided as follows:

"That any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, * * * may file with the said Custodian a notice of his claim * * *, and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held. * * * If the President shall not so order, * * * said claimant may institute a suit in equity * * * in the District Court of the United States for the district in which such claimant resides, * * * to establish the interest, right, title, or debt so claimed."

Subsection (d) of section 9 of the act is:

"Whenever a person, deceased, would have been entitled, if living, to the return of his

money or other property hereunder, then his legal representative may proceed for the return of such money or other property as provided in subsection (a) hereof: Provided, however, that the President or the court, as the case may be, before granting such relief shall impose such conditions by way of security or otherwise, as the President or the court, respectively, shall deem sufficient to insure that such legal representative will redeliver to the Alien Property Custodian such portion of the money or other property so received by him as shall be distributable to any person not eligible as a claimant under subsections (a) or (c) hereof."

Thus, it is provided, I, that the plaintiff must be the legal representative of a person who, if living, would be entitled to the property; II, if the property which it is asked to have returned is distributable to a person who is ineligible to claim under the Trading with the Enemy Act, the plaintiff must then give security. Admittedly, Wesche, if living, would have been entitled to the return of his property; therefore the plaintiff, his legal representative, is entitled to proceed for its return under subsection (d).

[1] The next question is whether Amalie Flohr, to whom the property is distributable, is a person ineligible to claim under the Trading with the Enemy Act, or is she an eligible claimant under subsection (a) of section 9, which provides that nonenemies may claim?

The property could not be withheld from Wesche, were he living; he had an absolute right to it. Wesche did not die until June, 1922. There had been no "capture." The power of the Alien Property Custodian to make a new seizure under any right of capture expired July 2, 1921. Miller v. Rouse (D. C.) 276 F. 715. Therefore, as Amalie Flohr had no interest in the property until after the possibility of a new seizure by the Alien Property Custodian had expired, there is no tenable ground, it seems to me, upon which the refusal to deliver the property to the plaintiff can be based. Amalie Flohr may claim under section 9 (a) as an alien friend.

Section 9 (b) 9 does not apply because, if this section is read in connection with other sections and their subdivisions, as it obviously must be, it is clear that section 9 (b) 9 applies to one who was "at such time a citizen of Germany * * * *"—such time referring to the time the property was seized.

[2] The Joint Resolution of July 2, 1921, and the Treaty of August 25, 1921, dealt only with property which, at that time, belonged to enemies, and not with nonenemy property, which might subsequently be acquired by German citizens, who were not enemies at the time of the acquisition of the property. I think a distinction should be and was intended to be made between seizures where property was enemy property when seized, and property which was not enemy property when seized, but to which a German citizen has become entitled since July 2, 1921.

Therefore the defendants' motion to dismiss the bill is denied, and the return of the property in question is directed, without conditions.