[Civ. No. 6315.   Third Appellate District.—February 6, 1940.]

In the Matter of the Estate of ELLEN MARY WILLIAMS, Deceased. STATE OF CALIFORNIA, Appellant, v. HERMAN A. KOCH, as Administrator, etc., et al., Respondents.

Earl Warren, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Appellant.

C. H. S. Bidwell and E. Hendricksen for Respondents.

TUTTLE, J.—This is an action brought by the heirs and representatives of the heirs of Ellen Mary Williams, deceased, under the provisions of sections 1272 and 1272a of the Code of Civil Procedure, to recover money paid into the state treasury under an order of court in the estate of said deceased. The trial court found that respondents were entitled to recover, and judgment was entered accordingly. The State now appeals from said judgment.

Ellen Mary Williams died testate in the city of San Francisco on the 29th day of July, 1914, leaving surviving her as

her next of kin three children, George A. Williams, John S. Williams and Grace Morford. In due course her estate was probated in the Superior Court of San Francisco, and in 1915 the said superior court made and entered its decree of distribution, distributing the property of the estate according to the terms of the will of Ellen Mary Williams and naming as her only heirs her said three children above named. The will of said deceased contained several bequests in which we are not interested in this case. But the will made two bequests to the Union Trust Company of San Francisco of five thousand dollars each in trust for two of her children, which were distributed by the decree in the following words:

"I give, devise and bequeath to the Union Trust Company of San Francisco the sum of Five Thousand ($5000.00) Dollars in trust nevertheless for the use and benefit of my son, John S. Williams, and I direct that my said trustee shall invest the said trust fund as a deposit in the savings department of said trustee's bank, and that the said trust fund be paid by my said trustee to my said son, John S. Williams, as follows, to-wit: Fifty ($50.00) Dollars a month on the first day of each and every month from and after the distribution of my estate until the full principal sum and interest thereon shall have been paid to the said John S. Williams, if he shall so long live, and in the event of his death before the payment to him of the full amount herein and hereby directed to be paid to him by said trustee, then any balance remaining unpaid I direct my said trustee to pay in the same amounts and at the same times, and in the same manner above provided to my daughter Grace Morford, nee Williams, of the City of Sacramento, State of California, the wife of Arthur Morford, if she be then alive, until the full sum provided to be paid has been paid, if she so long live, and in the event of her death prior to such payment, the balance undisposed. *I direct my said trustee to pay to any of my heirs then living in such manner as is by law provided.*"

All of the children of Ellen Mary Williams died within a few years. Following the death of John, the last surviving son, and on June 14, 1930, the Wells Fargo Bank and Union Trust Company of San Francisco, successor to the Union Trust Company, duly qualified, appointed and acting trustee under the last will and testament of Ellen Mary Williams, deceased, made its final report and account of the adminis-

tration of said trust, and presented the same to the court for settlement of said account and petitioned for a decree of the court terminating the trust and distributing the trust fund in its hands. Said petition recited that the terms of the trust in the will of Ellen Mary Williams had been carried out by the trustee, and that all and every direction contained therein had been complied with and executed by the trustee. and that "the trust is in a condition to be closed and terminated". *It then alleged that the petitioner was informed that there were no heirs at law of said Ellen Mary Williams, deceased, and no person to claim the residue of said trust funds remaining in the hands of the petitioner.* The prayer of the petition sought an order and decree settling the trustee's account, an order and allowance for reasonable trustee and attorney services, a decree terminating the trust and directing the trustee to pay the balance of the trust fund remaining to the credit of the estate "to whomsoever may be entitled thereto". The State of California thereupon filed a petition in intervention and asked for distribution to the state, alleging: *"that there are no persons entitled to distribution of decedent's trust estate, and therefore . . . that the State of California is a party in interest in the said estate, which is about to, and should escheat to the State of California".*

Upon the matter regularly coming on for hearing the court, in the city and county of San Francisco, executed and made its decree settling the final account of the trustee and distributing the residue of the estate to the State of California, the decree reciting:

"It is further ordered, adjudged and decreed, and the court so finds, that there are no heirs at law of said Ellen Mary Williams, deceased, and there was no such heir surviving at the time of the death of said John S. Williams, the surviving beneficiary under said trust; and that the residue of said trust estate, after payment of expenses of administration, be, and the same is hereby distributed to the State of California, said residue being the sum of $6371.94, which, less expenses, leaves a balance for distribution to said State of $5121.94 under the laws of said State in such cases made and provided."

The money so distributed to the State of California was deposited, pursuant to said decree, in the state treasury. Approximately two years later and on the 31st day of March,

1932, a citation was issued by the Superior Court in and for the County of Sacramento, pursuant to section 1272 and section 1272a of the Code of Civil Procedure of this state, requiring the attorney-general and the State of California to appear and show cause why the money paid into the state treasury should not be paid to petitioners upon the ground that they were the heirs at law of the decedent.

It is conceded by the State that, at the time of the death of the surviving son, John, there were living, John O'Sullivan, Cornelius O'Sullivan, and Kate Cotter, brothers and sisters of said Ellen Mary Williams, deceased, who are here represented by an administrator, and the other respondents named in the proceeding, who are nieces and nephews of said decedent. It thus appears that the respondents are all collateral heirs of Ellen Mary Williams, deceased.

■ It is first contended by the State that the *original* decree of distribution found that the only heirs of Ellen Mary Williams, *then* living, were her three children; that this is a final adjudication to the effect that these respondents were not her heirs; that the latter are estopped from here maintaining that they are heirs of Ellen Mary Williams, and that upon the death of the last beneficiary under the will, son John, the residue of the estate in trust was *bona vacantia,* and should therefore escheat to the State of California. We are unable to agree with this narrow construction of the word "heirs". It is clear, from the language of the will (quoted *supra*) that Ellen Mary Williams intended that, upon the death of all beneficiaries under the trust, that the residue of the trust fund should go, not to the State, but to any of her heirs living at the death of the surviving beneficiary. When the court found her only heirs to be her three children, this was all that was necessary to be then determined. There was no adjudication of the fact as to who would be "heirs" at the termination of the trust, for the reason that it was impossible to determine such fact upon distribution and prior to the termination of the trust. Thus it appears that there can be no estoppel because there was no adjudication of the issue.

■ It is next contended by appellant that respondents are likewise estopped by the decree settling the final account of the trustee (quoted *supra*), in which it is found that "there are no heirs at law of Ellen Mary Williams, deceased, and there was no such heir surviving at the time of the death of

said John S. Williams, the surviving beneficiary under said trust''. It will be noted that this decree was made in the face of the fact that at such times there were living a number of such heirs. No notice of the hearing of the petition upon which said decree was based was served upon these heirs—respondents herein—many of them living within the State of California. The only notice given was by posting for ten days—one copy was posted at the courthouse. The notice may have complied technically with the probate law, but under the circumstances, the failure or neglect to give these heirs personal notice is a course not to be commended. This is so, assuming that there may have been some legal question as to whether or not they were the sort of heirs who might succeed to the trust fund. We do not believe, however, that this finding to the effect that there were no heirs, precludes or estops respondents from setting up their right to the fund. At the most, the finding must be construed to the effect that there were no ''known heirs''. It merely means that the court could find no heirs. ''It is, however, a presumption of law that every intestate has left someone on earth entitled to claim as his heir, however remote. Practically, therefore, omitting the variation mentioned above, it is meant that no lawful heirs can be found.'' (10 Cal. Jur., p. 567, sec. 1.) ■ The very purpose of the escheat statute is to permit heirs who were unknown at the time of distribution to subsequently establish their right to property distributed to the State for lack of ''known heirs''. Section 1272a of the Code of Civil Procedure, as reasonably construed, gives these respondents the right to proceed as they have, where property has been distributed to the State after a finding in a decree that the decedent left no heirs, and the law carries the implication that the decree of distribution to the State necessarily found that there were no heirs; otherwise, how could such a distribution ever be made? The section reads in part as follows:

''Any person entitled to succeed to the property, or to take title thereto, or possession thereof, and not a party or privy to any proceedings had under any of the foregoing sections of this title, may, unless otherwise barred, file a petition in the Superior Court of the County of Sacramento showing his claim or right to the property, or the proceeds thereof, or to any portion thereof.''

.This was the law under which the action was brought, and we hold that the decree distributing the trust fund does not bar the right of respondents. The fact that title has vested in the State under such a decree of distribution cannot bar these respondents. The section of the Code of Civil Procedure under which the action is brought—(section 1272a)—specifically gives them the right to recover, as it refers to ''other property, real or personal, which is to be held for third persons, or *the title to which is vested in the state, subject to the rights of third parties''*.

█ It is next contended by appellant that the Superior Court of Sacramento County has no jurisdiction to determine the matter of heirship. What we have said disposes of this issue. It is not a question of conflict of jurisdiction. This is a statutory proceeding, and the right to maintain it in Sacramento County is not affected in any manner by the prior proceedings in another county. The fact that a decree of distribution to the State under section 1272a of the Code of Civil Procedure, finds that there are no heirs, does not estop those who afterward claim to be heirs, from maintaining an action under said section to establish their right to property in the hands of the State.

█ The intervention of the attorney-general in the proceedings to terminate the trust, does not assist the State in any manner, or add to the legal effect of the decree distributing the trust fund so as to create an estoppel. The only manner in which the attorney-general, on behalf of the State, can proceed to secure a judgment of escheat is under the provisions of section 1269 of the Code of Civil Procedure. The proceedings in intervention did not follow that section. The distribution of the trust fund to the State was therefore in no different category than any other distribution where no heirs are found, and parties entitled to succeed to the estate would have five years from the receipt of the money by the State in which to commence proceedings under section 1272a of the Code of Civil Procedure.

We find no other contentions which require further discussion. These respondents are admittedly heirs of Ellen Mary Williams. They come clearly within the purview of the law governing escheats. The State holds property distributed to it from the estate of Ellen Mary Williams, for the

reason that there were no known heirs. They are therefore entitled to recover.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.