[Civ. No. 7397.   Third Dist.   Mar. 23, 1948.]

Estate of JESSE LAURENCE, Deceased. SHELDON BRANDENBURGER, as Administrator, etc., Respondent, v. STATE OF CALIFORNIA et al., Appellants.

Fred N. Howser, Attorney General, William J. Power, Gladys S. Burroughs, and Edward G. Benard, Deputy Attorneys General, for Appellants.

Brandenburger & White for Respondent.

ADAMS, P. J.—The facts in this case are not in dispute. Jesse Laurence died in California on February 12, 1930, leaving a small estate which, after administration by the public administrator, was distributed to decedent's mother, Julia Candida de Jesus, "residing at Terceira, Azores Islands," in June, 1931. The estate so distributed consisted of $431.17 in cash. It was never collected by the distributee, but was first deposited in the county treasury, and on January 27, 1941, transferred to the state treasury.

Julia Candida de Jesus died in Portugal on December 30, 1934. On January 29, 1945, plaintiff Brandenburger was appointed administrator of her estate in Sacramento County, and on the same day filed a petition in the estate of Laurence to recover the said sum of $431.17 from the state treasury on behalf of the estate of Julia Candida de Jesus. In said petition, which was verified by petitioner, it was alleged that "petitioner did not, nor did Julia Candida de Jesus participate in said probate proceedings in the matter of the Estate of Jesse Laurence, deceased, nor offer any proof therein to establish the claim of said Julia Candida de Jesus." Thereafter said petition was amended, the foregoing allegation being omitted; but there was added the allegation that "Proof was made on behalf of Julia Candida de Jesus in said probate proceedings establishing her right to inherit as sole heir, and Decree of Distribution was thereupon made as above set forth." Nowhere in said petition was it revealed that said Julia Candida de Jesus was a nonresident alien nor was it alleged that she had ever appeared in such proceeding and/or claimed the property.

Opposition to the granting of such petition was filed by the state treasurer, the state controller and the attorney general, alleging that more than five years had elapsed since the death of Jesse Laurence, that Julia Candida de Jesus was, at the time of decedent's death, and at all times thereafter remained, a nonresident alien, being a citizen of Portugal, and that she had never, within that period, made any claim to his estate, and, therefore, under the provisions of section 1026 of the Probate Code of California and sections 672 and 1404 of the

Civil Code as they formerly existed, any claim for or on behalf of her estate was barred, and the said $431.17 was subject to escheat to the State of California.

The court held that since, in the estate of Laurence, a decree of distribution had been entered distributing the residue of the estate to Julia Candida de Jesus, it must be presumed that she had claimed the estate prior thereto, and therefore within the five-year period fixed by section 1026, *supra*; and that, therefore, the decree must stand unless proof were produced showing that the distributee did not appear in the estate proceeding or within the five-year period to make claim to said estate. In its findings it found that Julia Candida de Jesus was a nonresident alien and that she was never in the United States; but, based upon the decree of distribution in the probate proceedings, it found that the said Julia Candida de Jesus did, "within the time for making claim and before the Decree of Distribution was made, appear and make proof *of her right to inherit the estate of said decedent.*" (Italics ours.)

Thereafter a substitute finding was made to the effect that the record or testimony upon which the decree of distribution in the Laurence estate was based had not been preserved, but that petitioner had introduced in evidence an affidavit found in the files, made by Manuel M. Esteves, dated May 12, 1930, in which affiant had stated that he resided at Ripon, California; that deceased (Laurence) never married and had no children; that deceased's father had died in the Azores in 1926; that the mother of said deceased, residing in the Azores, was the only heir at law of deceased Laurence; that Laurence was the brother of affiant's wife, and that affiant and his wife had been in communication with her mother in the Azores. The court then again recited that from the foregoing it found that Julia Candida de Jesus did, before the decree of distribution, "appear and make proof of her right to inherit the estate of said deceased"; and thereupon a judgment was entered ordering payment of the $431.17 to petitioner. A motion for a new trial was denied, and this appeal followed.

A settled statement has been filed here, showing that in the trial court in this proceeding Marie Julia Esteves was produced as a witness, but no other oral evidence was presented; that said witness testified that Jesse Laurence was her brother; that Julia Candida de Jesus was their mother; that Julia Candida de Jesus was living in Portugal at the time of the death of Jesse Laurence; that she had communication with her by

mail; that Julia Candida de Jesus was never in America; that Manuel M. Esteves was the husband of the witness and that neither she nor her husband had received a power of attorney from Julia Candida de Jesus to collect the money here involved; that said Julia Candida de Jesus died in Portugal on December 30, 1934; that besides the witness herself there were three other children of Julia Candida de Jesus, all of whom at all times had resided and still did reside in Portugal; that she, herself, for some time prior to the death of Jesse Laurence, and at all times since, had resided at Route 1, Box 227, Ripon, California.

It is apparent from the decision of the trial court and from opinions filed by it, that its decision was based upon the proposition that in the absence of proof to the contrary, a decree of distribution which distributes an estate to one who is in fact a nonresident alien (though such fact is not stated in the decree) is evidence that said nonresident alien appeared and made claim to the property of said estate prior to the making of said decree; and that where such decree is made before the lapse of five years from the death of the decedent whose estate is so distributed, the statutes of this state are satisfied. In other words, that because a probate court distributes to an heir who is a nonresident alien it is to be presumed that such alien appeared and demanded the estate in such court *prior* to such decree.

Appellants on the other hand contend that on the death of Laurence, his mother, as his only heir at law, succeeded to his estate by virtue of our succession statutes; that upon a showing that Julia Candida de Jesus was the only heir at law of her deceased son it was proper for the probate court to decree distribution to her whether or not she had appeared and claimed the estate; that the statute did not require that a nonresident alien make claim to the right of succession before a decree of distribution could be made, but only required that she should appear and claim the property within five years of the death of the decedent; and that, as in this case the money distributed had remained in the county treasury and the state treasury for 14 years after the death of Laurence and no claim therefor had been made until petitioner made his claim in 1945, it was obvious that no such demand had been made within the prescribed five years.

Section 671 of the Civil Code at the time of Laurence's death provided and still provides: ''Any person, whether

citizen or alien, may take, hold, and dispose of property, real or personal, within this state." And sections 672 and 1404 of the Civil Code provided:

"672. If a non-resident alien takes by succession, he must appear and *claim the property* within five years from the time of succession, or be barred. The property in such case is disposed of as provided in title eight, part three, Code of Civil Procedure." (Italics ours.)

"1404. Resident aliens may take in all cases by succession as citizens; and no person capable of succeeding under the provisions of this title is precluded from such succession by reason of the alienage of any relative; but no non-resident foreigner can take by succession unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession."

In 1933, said sections were incorporated into section 1026 of the Probate Code reading:

"A nonresident alien who becomes entitled to property by succession must appear and demand the property within five years from the time of succession; otherwise, his rights are barred and the property shall be disposed of as escheated property."

One entitled to succession takes, not by virtue of the decree of distribution, but by the law of succession. And title vests in such heir upon the death of the ancestor, subject only to the control of the probate court and to the possession of any administrator for the purposes of administration. (Prob. Code, § 300, formerly Civ. Code, § 1384; *Trippet* v. *State*, 149 Cal. 521, 529 [86 P. 1084, 8 L.R.A. N.S. 1210]; *Estate of Benvenuto*, 183 Cal. 382, 386 [191 P. 678]; *U. S. Fidelity & Guaranty Co.* v. *Mathews*, 207 Cal. 556, 559 [279 P. 655]; *Estate of Kalt*, 16 Cal.2d 807, 811 [108 P.2d 401, 133 A.L.R. 1424]; *Estate of Michels*, 18 Cal.App.2d 201, 204 [63 P.2d 333].)

A decree of distribution to such heir does no more than declare the title of the heir which accrued at the moment of decedent's death. That is all that is necessary to be determined. (*Schade* v. *Stewart*, 205 Cal. 658, 660 [272 P. 567]; *Western Pacific Railway Co.* v. *Godfrey*, 166 Cal. 346, 349 [136 P. 284, Ann. Cas. 1915B 825]; *Estate of Wellings*, 192 Cal. 506, 510 [221 P. 628]; *Estate of Wellings*, 197 Cal. 189, 194 [240 P. 21].)

Here the decree does not recite that Julia Candida de Jesus

was a nonresident alien, nor does it appear that the said probate court was aware that she was such.

■ However, while title of a nonresident alien heir vests upon the death of decedent, it does so on the condition subsequent that he appear and demand the property within the prescribed period of five years. This has been held in numerous cases. In *Lyons* v. *State,* 67 Cal. 380 [7 P. 763], a decedent resident of California died leaving as his only heirs at law certain alien residents of Ireland, who appeared and claimed the estate. The State of California contended that under section 4, article IX, of our state Constitution, decedent's estate had vested *eo instante* in the state; but the court said, page 384: "The fault in the argument is that Guilford did not die without heirs. The petitioners were his heirs, and the property of his estate vested in them subject to be divested if they did not appear and claim it within the time and in the manner provided by statute." To a like effect is the holding in *Carrasco* v. *State,* 67 Cal. 385 [7 P. 766]. There a California resident died, leaving surviving him a widow and minor child residing in Chile. The minor child died, and the widow assigned her interest in the estate to Carrasco, who, after the estate had been administered and the residue paid into the state treasury, appeared and claimed same—presumably within five years from the death of decedent. The court held that since, under sections 671 and 672 of the Civil Code, an alien may take, hold or dispose of property, real or personal, within the state if claimed within the given time, such person took by succession and could dispose of her interest; and that the buyer or assignee could then claim same.

In *State* v. *Smith,* 70 Cal. 153 [12 P. 121], it was contended also that a nonresident alien could not take by succession. The court said, page 156:

"All aliens take by *succession.* (Civ. Code, sec. 671.) The failure of a non-resident alien to 'appear and claim' within five years after descent cast operates a bar of his right to assert any title in the property as against the state. And this not on the idea that the property has escheated to the state, as of the date of the death of the ancestor, but because by the law the 'non-resident' takes subject to the loss of his right by a failure to make claim within the five years. The clause of section 672 is a limitation, applicable, however, not alone to the commencement of an action in the courts, but to any appearance within the state and the assertion of a claim.

whether by such action or otherwise. The claim may be *in pais*, as by taking possession of the property, or conveying or contracting with respect to it. If he fails to appear and claim it, the property is escheat at the expiration of the five years.''

Also see *People* v. *Roach*, 76 Cal. 294, 296 [18 P. 407]; *Estate of Pendergast*, 143 Cal. 135, 140 [76 P. 962]; *Estate of Romaris*, 191 Cal. 740, 744 [218 P. 421]; *State* v. *Miller*, 149 Cal. 208, 210 [85 P. 609]; 1 Cal.Jur. 925.

Respondents rely upon *Estate of Aufret*, 187 Cal. 34 [200 P. 946], arguing that it was there decided that where a decree of distribution has been made distributing to a nonresident alien, the decree is conclusive, and it must be presumed therefrom that the nonresident alien distributee had appeared and claimed, else the trial court would not have made such a decree. In the Aufret case a decree did make distribution to persons known to be nonresident aliens, and an appeal therefrom was taken by the attorney general of this state who had appeared in the probate proceeding and opposed the petition for distribution. The state's opposition set forth that petitioners were citizens and residents of France and that they had not appeared and claimed the estate within five years from the death of decedent Aufret. The court said, page 36:

''The answer does not state facts sufficient to show that the respondents are not entitled to the estate under the provisions of our Civil Code on the subject. Section 672 declares that 'If a nonresident alien takes by succession, he must appear and claim the property within five years from the time of succession, or be barred.' Section 1404 provides, further, that aliens may take by succession the same as citizens: 'but no nonresident foreigner can take by succession unless he appears and claims such succession within five years after the death of the decedent to whom he claims succession.' The answer does not aver that the respondents, or either of them, were not residents and citizens of California, or of the United States, at the time of the death of Suzanne Aufret in 1908, and ever since, until the time of the filing of the answer in the year 1919. If they were such residents or citizens at the time of the death of the decedent, they would immediately succeed to the title, free from the condition expressed in section 1404, and no claim on their part would be necessary to enable them to take by the succession. On the face of the petition and answer thereto, since the relationship was not disputed, the court below was authorized to make the distribution to the

respondents, as it did. In our consideration of the case, since the answer stated no defense, it may be entirely disregarded." However, it went on to say (p. 37) that as error is never presumed and all intendments were in favor of the judgment, in the absence of evidence it would be presumed that there was proof to the effect that respondents had within five years after the death of the decedent appeared and *claimed succession* to the property.

In that case it is implied that unless the alien heir had appeared and claimed succession no decree of distribution would or could have been made distributing the estate to her. But we do not think that such conclusion necessarily follows. There is nothing in the decree of distribution in the case before us to indicate that the distributee was a nonresident alien. The decree recites: "That said deceased died on the 12th day of February, 1930, in the County of San Joaquin, State of California, and was a resident of said County and State at the time of his death, and that he left surviving him as his only heir at law his mother, Julia Candida de Jesus, over the age of majority, residing at Terceira, Azores Islands, and that said Julia Candida de Jesus is entitled to the distribution of the residue of said estate."

It being made to appear that Julia Candida de Jesus was the only heir at law of decedent it was proper for the court to order distribution to her, regardless of her status. There is nothing in our statutes that required that the claim to the property be made prior to distribution. Title had already vested in her by virtue of section 671, *supra,* subject to be divested if she failed to make claim within five years. Section 672 did not provide that she must make claim to the *succession,* but claim to the *property itself.* She had five years to do so, and presumably could have asserted her claim within that time even if the estate had in the meantime been distributed to another. (For analogy see *Estate of Williams,* 37 Cal.App.2d 181, 187 [99 P.2d 349]; *Estate of Lindquist,* 25 Cal.2d 697, 712 [154 P.2d 879].) The decree of distribution had no greater effect than to declare the title already vested in her by reason of her right as an heir. And as that right was subject to the condition subsequent, that she claim the property within the prescribed five year period, no reason appears why the decree is not likewise subject to such condition though it did not so recite. Obviously the state could not have claimed it as escheated property until after five

years, regardless of the decree; and even if the state had appeared in the probate proceeding, such appearance and a showing that the distributee was a nonresident alien would not have had the effect of destroying her right to succession which arose from her relationship to the decedent, and by virtue of section 671 of the Civil Code, *supra.*

*Bell* v. *Wilson,* 159 Cal. 57 [112 P. 1100], though it concerned an out-of-state heir rather than an alien nonresident, is applicable. The court said, page 61:

"In making a decree of distribution it is the duty of the court to 'name the persons and the proportions or parts to which each shall be entitled, and such persons may demand, sue for and recover their respective shares from the executor or administrator, or any person having the same in possession.' (Code Civ. Proc., sec. 1666.) It is not enjoined as a duty upon the court in making the decree of distribution to enter into any investigation as to whether a distributee is or is not a resident of the state, or if a non-resident whether he has or has not an agent here. Whether he is a resident or not only becomes of real importance after the distribution is made and is then only important in as far as it may affect the closing of the administration of the estate. The fact that the distributee is a non-resident does not preclude him from receiving from the executor or administrator his distributive share. When a non-resident knows that he is entitled to a portion of the estate he may be relied on to take measures to obtain it either personally as soon as the administrator is prepared to deliver it, or to appoint his own agent for that purpose, and in either event furnish the administrator with proper vouchers so as not to embarrass the closing of the estate and the final discharge of the administrator."

Under the authorities hereinabove cited, the heir in this case, being a nonresident, succeeded to the title to the property of the estate subject to divestiture if she did not claim *the property,* not before a decree of distribution had been made, but within five years from the death of the decedent. And in order to prevent such divestiture it was necessary to show that she had appeared and claimed the property within five years. No such showing was made. On the contrary, it is conceded that she was never in the United States; and her only relatives here—her daughter and son-in-law—though they testified that they had been in communication with the mother, stated that they had never received a power of attorney from her to collect the money. Also the fact that the

property remained uncalled for in the possession of the county and state treasurers for 14 years after the death of Laurence indicates that no claim to such possession was made. It being presumed that official duty has been performed, it may be presumed that if the heir had made such claim within the five years the property would have been turned over to her or her authorized representative.

We are of the opinion that the evidence in the case as matter of law does not support the conclusions of the trial court, and its judgment is therefore reversed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied April 23, 1948, and respondent's petition for a hearing by the Supreme Court was denied May 20, 1948. Shenk, J., and Schauer, J., voted for a hearing.