[Civ. No. 21489. Second Dist., Div. Two. Apr. 12, 1956.]

Estate of LOUISE SCHNEIDER, Deceased. HERBERT BROWNELL, JR., as United States Attorney General, Appellant, v. ELISE KILIAN et al., Respondents.

Dallas S. Townsend, Assistant Attorney General (United States), Director, Office of Alien Property; Laughlin E. Waters, United States Attorney; Max F. Deutz, Chief, Civil Division; Arline Martin, Assistant United States Attorney, Southern District of California; Mary Eschweiler, Office of Alien Property; James D. Hill, George B. Searls and Irwin A. Seibel, Attorneys, Department of Justice (Washington, D.C.), for Appellant.

H. A. Gebhardt for Respondents.

MOORE, P. J.— The question for decision is whether, despite the vesting order of the Alien Property Custodian vesting in him all right, title and claim of certain German nationals named beneficiaries of a testamentary trust in the will of Louise Schneider, deceased, the superior court lawfully distributed to such nationals the interests provided for or bequeathed to them by decedent.

Decedent was an American citizen and a resident of California. March 29, 1943, she made her last will—whereby she bequeathed certain legacies to relatives of her deceased husband and herself who were nationals of Germany and resided in the Fatherland. The testatrix departed this life on March 31, 1945. On May 7, 1946, pursuant to statute, the Alien Property Custodian made a vesting order[1] declaring "All

_____

[1]Pursuant to the Trading with the Enemy Act, 50 U.S.C.A. §§ 5(b) and 7(c); Executive Order 9095, at p. 43 of 50 U.S.C.A. following § 6.

right, title, interest and claim of any kind or character whatsoever of Otto Viereck" and other specified German nationals "in and to the Estate of Louise Schneider, deceased" to be vested in him, the Alien Property Custodian, "to be held, used, administered, liquidated, sold or otherwise dealt with in the interest and for the benefit of the United States."

The provisions of the will so far as pertinent to this proceeding are as follows, to wit:

"ELEVENTH: I give, devise and bequeath the sum of Twenty Six Thousand ($26,000.00) Dollars unto DONALD R. PECK, of Glendale, California, IN TRUST, or in the event of his death or refusal or inability to act, unto the SECURITY FIRST NATIONAL BANK OF LOS ANGELES, a national banking corporation, IN TRUST, for the following uses and purposes, to wit:

"(A) Subject to the payment of the expenses of management of the trust estate and administering this trust, including a reasonable compensation for services rendered by the trustee to be determined by the court in which my estate is administered, corpus and income of and from the trust estate shall be held and distributed in the manner following:

"1. The entire net income from said trust estate shall be distributed in quarterly or other convenient installments to my husband's sister, EMMA SCHNEIDER. Should EMMA SCHNEIDER die during the continuance of this trust, the income thereof shall be distributed in equal shares to my nieces, ELISE KILIAN, MARTHA MICHELS, LOUISE HILLEBOLD, and MARIE HOFMAN, and to the survivor of them.

"2. This trust shall terminate upon the death of the last survivor of EMMA SCHNEIDER, ELISE KILIAN, MARTHA MICHELS, LOUISE HILLEBOLD and MARIE HOFMAN and the entire corpus thereof shall be distributed as follows:

"a. One-half thereof shall be distributed in equal shares to my brothers and sisters living at the time of my demise and to the then living lineal descendants of any deceased brothers and sisters of mine, said lineal descendants to take by right of representation and not per capita.

"b. The other half shall be distributed in equal shares to the brothers and sisters of my deceased husband, OTTO SCHNEIDER, living at the time of my demise and to the then living lineal descendants of any deceased brothers and sisters of my deceased husband, said lineal descendants to take by right of representation and not per capita.

"3. If at any time during the continuance of this trust alien residents of Germany shall become legally entitled under

the laws of the United States and the State of California to take and inherit under my will and this trust, then upon the happening of that event this trust shall cease and terminate, anything to the contrary in this paragraph Eleventh of my will notwithstanding, and there shall thereupon be distributed by my trustee to the following named persons the amount of cash set opposite their respective names, to wit:

 (a) To my sister LISCHEN VIERECK .........$10,000.00
 (b) To my husband's sister, ANNA SEIBERT... 5,000.00
 (c) To my niece, LOUISA HEITMAN .......... 3,000.00
 (d) To my grandnephew, OTTO VIERECK .... 2,000.00
 (e) To my grandniece, KATCHEN VIERECK ... 1,000.00
 (f) To my niece, MARIE KRAUSE ............ 1,000.00
 (g) To my niece, RUTH KRAUSE ........... 1,000.00
 (h) To my husband's grandnephew, OTTO
 SCHNEIDER ......................... 1,000.00
 (i) To my husband's nephew, RICHARD
 SCHNEIDER ......................... 1,000.00
 (j) To my grandniece, LOUISE SONNENSCHEIN 1,000.00

If the total corpus of this trust on hand at the time of distribution under this subdivision be insufficient to pay the aforesaid bequests in full said bequests shall abate ratably.''

''TWELFTH: No beneficiary under any trusts created by this will shall assign, transfer, convey, anticipate, pledge, hypothecate, or otherwise encumber his or her interest thereunder, and neither the principal of the trusts, nor any income arising therefrom, shall be liable for any debt of any such beneficiary or be subject to any bankruptcy proceeding, or claim of creditors, or be subject to any judgment rendered against any such beneficiary, or to the process of any court in aid of execution of any judgment so rendered; and all of the income and principal under the trusts shall be transferable, payable and deliverable only to the beneficiaries designated hereunder at the times entitled to take the same under the terms of the trusts, and the personal receipt of said beneficiaries shall, at the option of the trustee, be conditions precedent to the payment or delivery of the same by the trustee to such beneficiaries.''

The language of Eleventh division of the will clearly and definitely creates a trust whose corpus is $26,000; makes provision for the payment of its net income to specified ''income beneficiaries'' and upon the death of the last survivor of such income beneficiaries, the trust shall terminate and the corpus

be distributed to the beneficiaries of the trust named in A-2-a and A-2-b of the Eleventh.

Subparagraph 3 of Eleventh is outstanding in two respects, namely, (1) it prescribes the condition that must arise to "terminate" the trust, and (2) it specifies the amount payable to each beneficiary by the trustee.

Pursuant to the petition of the executrix for instructions *re* distribution of the estate, after hearing, the court below made its findings which appear on the margin hereof.[2] Whereupon the following order was made:

"(c) The bequest of $10,000.00 to Lischen Viereck under

---

[2]THE FINDINGS

The court finds that at the time of death of the decedent reciprocal rights with respect to inheritance existed between citizens of the United States of America and citizens of Germany within the purview of Section 259 of the Probate Code of California.

The court finds that Otto Viereck is a German National and that by virtue of vesting orders heretofore filed the Attorney General of the United States is entitled to receive the specific bequest to Otto Viereck provided in paragraph Fourth of decedent's will.

The court finds that Richard Schneider, a beneficiary under paragraph Eleventh (A), 3, (i) of decedent's will, predeceased the testatrix; that said beneficiary was not related to the decedent; that the bequest of $1,000.00 under said paragraph to said beneficiary has lapsed and falls into the residue of said estate to be distributed under the residuary provisions contained in paragraph Thirteenth of decedent's will.

The court finds that the testatrix intended the interests created under paragraph Eleventh (A), 3 of her will to be conditional; that the intended condition precedent to the existence of the right to inherit was the coexistence of a right in the beneficiary personally to have and receive his share; that the testatrix did not intend to create any right by said provisions that would not avail to the personal benefit of the beneficiary; that the Attorney General of the United States is not entitled to any part of the twenty-six thousand dollar fund set forth in paragraph Eleventh of decedent's will, except to the extent that said Attorney General participates in the bequest therein of $1,000.00 to Richard Schneider which has lapsed and falls into the residue of said estate.

The court finds that Lischen Viereck, a beneficiary under paragraph Eleventh (A), 3, (a) of decedent's will, predeceased the testatrix; that said beneficiary was a sister of the testatrix and left surviving her two children, Wilhelm Viereck and Louisa Heitman; that said persons are entitled to receive, in equal shares, the bequest of $10,000 provided for Lischen Viereck in said paragraph.

The court finds that, other than as heretofore specified, all of the beneficiaries set forth in paragraph eleven, subdivision (A), 3, of decedent's will are residents and Nationals of Germany and are entitled personally to receive the respective sums specified in said paragraph.

The court finds that by virtue of vesting orders heretofore filed the Attorney General of the United States is entitled to receive the shares of all of the German Nationals who participate in the residue of the estate under the provisions of paragraph thirteenth of decedent's will.

The court further finds that the beneficiaries to whom distribution is hereinafter ordered are German Nationals.

paragraph Eleventh (A), 3, (a) of said Will shall be distributed in equal shares to Wilheim [sic] Viereck and Louisa Heitman.

"(d) The cash bequest to the persons, other than Richard Schneider and Lischen Viereck, specified in paragraph Eleventh (A), 3, of said will shall be distributed to the persons and in the amounts specified therein."

As successor to the Alien Property Custodian, the Attorney General of the United States appeals from the provisions (c) and (d) of the order which awarded the $10,000 bequest of Lischen Viereck to her children Wilhelm Viereck and Louisa Heitman and the $3,000 legacy to Louisa and the bequests to the other legatees named in XI, (A), 3 of the will.

### CAN ALIEN ENEMIES TAKE UNDER THE LAW?

All beneficiaries of the trust named in XI (A), 3, of the will are German nationals, residing in Germany. Because Richard Schneider, unrelated to the testatrix, predeceased her, his legacy lapsed and became a part of the residue. Lischen Viereck, sister of testatrix, also predeceased the latter, but she was survived by two children, Wilhelm Viereck and Louisa Heitman. Louisa seeks to have distributed to herself not only the $3,000 specifically designated as payable to her upon the termination of the trust, but also her half of the $10,000 marked for her mother. Wilhelm also prays payment to himself of the other half of his mother's inheritance. That they cannot prevail is clearly the meaning of the law as applied to the document under consideration.

When decedent executed her will in 1943, World War II cast a pall over the planet. It had already drawn the United States into the conflict with Germany, which rendered doubtful the likelihood that a German national for an indefinite period could inherit from his kinsman in America, despite the recently enacted statute (Prob. Code, § 259) providing for reciprocal inheritance by citizens of the United States and those of a power at war with us. While Hitler was at the zenith of his fury, it did not appear probable that the condition of section 259 could be fulfilled, because it is usually a question of fact. (*Estate of Schluttig,* 36 Cal.2d 416 [224 P.2d 695].)

A reference to section 259, Probate Code, discloses that its chief ingredient is that the "rights of aliens not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this State

by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries.''

Now, at the trial below, the court received uncontradicted evidence pertaining to the matter and made its finding that at the time of the death of decedent reciprocal rights with respect to inheritance existed between citizens of the United States of America and citizens of Germany within the purview of section 259 of the Probate Code of California. Such finding renders unnecessary a discussion of numerous points urged with respect to contingent future estates and the rights of the Alien Property Custodian concerning them. The finding establishes that prior to Mrs. Schneider's death, the time had already arrived, as the court found, when her relatives in the ''Vaterland'' were ''legally entitled'' to ''*take and inherit*'' under my will and this trust.'' The italicized phrase presents no problem. ▇ ''Take'' is used in section 259; ''inherit'' means to succeed to ownership of a decedent's property by virtue of statutory succession.

### The Right of Beneficiaries Residing in Germany to Take, Died A-Bornin'

▇ Respondents say that they ''did not acquire any right until the restrictions of wartime confiscation had passed, that their interests originated when they were personally able to receive the benefit of their inheritance which was after the time that German property could be vested and confiscated.'' This brings us to the observation that must be shocking to respondents: The trust provided by division Eleventh of the will never came into existence. The condition prescribed for its termination was fulfilled prior to the passing of testatrix. She emphatically chose to prefer her relatives in the homeland as against those who in comfort enjoyed the security and peaceful existence of America. It is patent, also, that she intended the former to possess the $26,000 as soon as they should be able to ''take'' it. Their counsel agreed at the

trial that the trust never came into being.[3] The court acknowledged that fact by ordering distribution directly to the persons named in XI (A) 3, whereby it ignored the trust.

Immediately, upon the death of Mrs. Schneider all legacies bequeathed by her, including the beneficial interests in the trust which had failed, vested in the designated donees (Prob. Code, §§ 300, 28; *Estate of Laurence*, 84 Cal.App.2d 500, 504 [191 P.2d 109]; *Burns* v. *McGraw*, 75 Cal.App.2d 481, 488 [171 P.2d 148]), subject only to the possession of the executrix for the purpose of administration. (Prob. Code, § 142; Civ. Code, § 694.) However, their delayed possession did not affect the fact that each legatee and each beneficiary was at decedent's death, vested with right of ownership of his bequest or beneficial interest. Such vesting occurred in 1945 when the testatrix departed this life. Hence, at the time, in 1946, when the Alien Property Custodian made the vesting order vesting ownership thereof in himself these beneficial interests were then the properties of the several persons named in (A) 3 of Eleventh and the Custodian was authorized by the Trading with the Enemy Act to seize them.

Respondents emphasize the Twelfth division of the will. It is true that, like any other spendthrift clause, it is proof that the testatrix intended that the principal and income should be payable only into the hands of each beneficiary. But when the trust failed, the title to the principal sum vested in and was payable to each legatee and the spendthrift provisions did not become operative. ■ "It is everywhere agreed that after the beneficiary has actually received the trust property his creditors may reach it and he may dispose of it as he wishes." (*Kelly* v. *Kelly*, 11 Cal.2d 356, 362 [79 P.2d 1059, 119 A.L.R. 71].) ■ It is well settled, however, that a person cannot by his own act create a trust that will protect his property from the claims of his creditors. It is against public policy to allow a man thus to tie up his property. (*McColgan* v. *Walter Magee, Inc.*, 172 Cal. 182, 186 [155 P. 995, Ann.Cas. 1917D 1050]; *Nelson* v. *California Trust Co.*, 33 Cal.2d 501 [202 P.2d 1021].)

■ That the corpus of a testamentary trust which is already distributable to the beneficiary is his property and is seizable by the Alien Property Custodian under the statute

---

[3] "THE COURT: If Mr. Gebhardt's position prevails it comes into existence and terminates.

"MR. GEBHARDT: And immediately terminates."

is declared in 93 Corpus Juris Secundum, section 26 (4), page 74 as follows: ''The property which is subject to seizure or restrictions as to transfer under the Trading with the Enemy Act includes every kind of property tangible or intangible, whether or not useful to war industries. Equitable as well as legal interests are included. Particular property or interests held to be within the statute include an interest in a decedent's estate,[4] such as a vested legacy, a contingent or expectant estate in remainder, an award of compensation for death, an award under a workmen's compensation statute, or a fund held by an American national for the benefit of an alien enemy. Other property or interests within the statute include the interest of a beneficiary in a trust, an interest in commissions or in a judgment, a debt, past-due installments owing to a wife under a separate maintenance decree, bonds or debentures, or corporate stock.''

Conceding that the interests thus created were contingent, they were nevertheless property interests capable of transfer or of inheritance. (Civ. Code, §§ 669, 688, 693, 699; *Sinclair* v. *Crabtree*, 211 Cal. 524, 528 [296 P. 79].) Since they were interests capable of transfer, they became property of the German beneficiaries promptly on the death of Mrs. Schneider in 1945.

The conclusion is, therefore, unavoidable that at the time of the vesting order, in 1946, the estate of each legatee and the beneficial interest of each beneficiary of the trust was subject to seizure under the Trading with the Enemy Act, as amended.

The foregoing discussion applies to all persons named in subparagraph 3 other than (1) Richard Schneider whose legacy lapsed and fell into the residue, and (2) testatrix' sister, Lischen Viereck, who predeceased her leaving two children, Wilhelm Viereck and Louisa Heitman. (Prob. Code, § 92.) They became legatees by virtue of the statute and with the same effect as if they had been so named in the will. (*Estate of Esposito,* 57 Cal.App.2d 859, 862 [135 P.2d 167]; *Estate of Pierce,* 32 Cal.2d 265, 270 [196 P.2d 1].) ''Although a beneficiary takes directly under the will of the testator under such an anti-lapse statute, he does so because the statute sub-

---

[4] *Application of Miller* (2 C.C.A.), 288 F. 760, 766; *In re Bendheim's Estate,* 124 Misc. 424 [209 N.Y.S. 141, 794]; *Central Hanover Bank & Trust Co.* v. *Markham,* 68 F.Supp. 829; *In re Carrington's Estate,* 195 Misc. 442 [90 N.Y.S.2d 757, 758]; *In re Littman's Estate,* 176 Misc. 679 [28 N.Y.S.2d 458, 459].

stitutes him for the predeceased devisee or legatee. He takes, not by virtue of the expressed intentions of the testator, but solely by virtue of the statute.'' (*Estate of Pierce, supra,* 270.) The vesting order named Lischen Viereck and purported to seize all her right, title and interest in the Schneider estate; but of course she had none. That order also named Louisa Heitman who was given a legacy of $3,000 under subparagraph 3, an interest which was increased to $8,000 through her mother's death; but it did not name or purport to vest any interest of Wilhelm Viereck. An amendment to the vesting order was made on May 13, 1954, under which this interest was seized. Such amendment was after the presidential proclamation of October 24, 1951, declaring the state of war with Germany to have terminated on October 19, 1951. (50 U.S.C.A. App. p. XXI.)

By its terms, the statutory power of seizure was limited to a period ''during the time of war or during any other period of national emergency declared by the President.'' (50 U.S.C.A.App. § 5(b) (1).) The earlier decisions are to the effect that that power cannot be exercised after the officially declared termination of hostilities. (*Miller* v. *Rouse* (D.C. N.Y.), 276 F. 715, 716-717; *Matheson* v. *Hicks* (D.C. N.Y.), 10 F.2d 872, 873; *Sutherland* v. *Guaranty Trust Co.* (2d C.C.A.), 11 F.2d 696, 698; *United States Trust Co.* v. *Hicks* (D.C. So.D. N.Y.), 16 F.2d 286, 288; *In re Sutherland* (2d C.C.A.), 23 F.2d 595, 599.) But the Congressional Resolution declaring the end of the war with Germany (50 U.S.C.A. App. p. XX) says: ''Provided, however, That notwithstanding this resolution and any proclamation issued by the President pursuant thereto, any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, or which has heretofore been vested or seized under that Act, including accruals to or proceeds of any such property or interest, shall continue to be subject to the provisions of that Act in the same manner and to the same extent as if this resolution had not been adopted and such proclamation had not been issued.'' Referring to that resolution, it was held that a seizure made after the termination date is a valid exercise of the war power, and the Supreme Court denied certiorari. (*Ladue & Co.* v. *Brownell,* 220 F.2d 468, 471; 350 U.S. 823 [76 S.Ct. 50, 100 L. ——].) It therefore must be concluded that Wilhelm

Viereck's interest was lawfully seized and falls in the same category as those of all the beneficiaries other than Richard Schneider.[5]

We have derived the foregoing decision with fearful misgivings. Research has exposed a strange and regrettable anomaly in the foreign relations of our central government. For 35 years the United States has expended billions of dollars in attempting to recapture and retain the friendship and loyal adherence of our enemies opposed in two world wars. It has verily poured out its wealth to accomplish that purpose within the German Republic. Now, after more than 10 years since fighting ceased, and over four years since World War II was declared terminated (50 U.S.C.A.App. p. XX) that same government, actuated by generous impulses toward a fallen foe, in nurturing the German state and its subdued people, withholds from these individuals within Germany comparatively modest sums ranging from $1,000 to $8,000, aggregating $25,000. By confiscating such moneys, we forfeit more goodwill than might have been acquired by the payment of multiplied thousands to the Bonn Government whether applied directly or indirectly to that end.

That the government's insistence upon its share of Mrs. Schneider's estate is confiscation was conceded at the time of the oral argument. Also, it is apparent from a consideration of the "return" legislation which culminated in the enactment of section 39 of the act passed in 1946 (50 U.S.C.A. App. p. 225) wherein it was provided as follows: "No property or interest therein of Germany, Japan, or any national of either such country vested in or transferred to any officer or agency of the Government at any time after December 17, 1941, pursuant to the provisions of this Act [sections 1-6 and 7-39 of this Appendix], shall be returned to former owners thereof or their successors in interest, and the United States shall not pay compensation for any such property or interest therein. The net proceeds remaining upon the completion of administration, liquidation, and disposition pursuant to the provisions of this Act of any such property or

[5]General License No. 101, issued June 24, 1953, which unblocked frozen assets, specifically provides in section 511.101 (e): "Nothing in this section shall be deemed to apply (1) to any property or interest that has been vested, or as to which an outstanding supervisory order has been issued, by the Attorney General or the Alien Property Custodian or the Office of Alien Property Custodian." (18 Fed.Reg. 3687, 8 C.F.R., Section 511.101.)

interest therein shall be covered into the Treasury at the earliest practicable date . . ." (See discussion of this subject in *Guessefeldt* v. *McGrath*, 342 U.S. 308 [72 S.Ct. 338, 96 L.Ed. 342].) The remedy lies with the Congress.

▮ The order is reversed as to paragraphs (c) and (d) thereof; the following conclusions, designated in the order as findings, are stricken: "that the Attorney General of the United States is not entitled to any part of the twenty-six thousand dollar fund set forth in paragraph Eleventh of decedent's will, except to the extent that said Attorney General participates in the bequest therein of $1,000.00 to Richard Schneider which has lapsed and falls into the residue of said estate" (page 33, lines 23-29 of clerk's transcript herein); "that said persons are entitled to receive, in equal shares, the bequest of $10,000 provided for Lischen Viereck in said paragraph" (page 34, lines 2 and 3 of clerk's transcript herein); and "and are entitled personally to receive the respective sums specified in said paragraph" (page 34, lines 6 to 8 of clerk's transcript herein).

Paragraphs (c) and (d) of the order are stricken and in lieu thereof the following is inserted: "(c) The bequest of $10,000 to Lischen Viereck under paragraph Eleventh (A), 3, (a) of said Will shall be distributed to the Attorney General of the United States; (d) The cash legacies to the persons other than Richard Schneider and Lischen Viereck, specified in paragraph Eleventh (A), 3, of said Will shall be distributed to the Attorney General of the United States."

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 7, 1956, and respondents' petition for a hearing by the Supreme Court was denied June 6, 1956.